# EXHIBIT

# A

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305



USPS CERTIFIED MAIL™



9214 8901 1251 3410 0002 3544 25

**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

OCTANE ENVIRONMENTAL LLC
JOSEPH SEIKEL
45346 COURTVIEW TRL
NOVI, MI 48375

| | | |
|---|---|---|
| **Control Number:** 222695 | **Agent:** JOSEPH SEIKEL | |
| **Defendant:** OCTANE ENVIRONMENTAL LLC | **County:** Harrison | |
| 45346 COURTVIEW TRL | **Civil Action:** 18-C-144-2 | |
| NOVI, MI 48375 US | **Certified Number:** 92148901125134100002354425 | |
| | **Service Date:** 7/19/2018 | |

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper,* **not to the Secretary of State's office**.

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

IN THE CIRCUIT COURT OF HARRISON COUNTY, WEST VIRGINIA

RICK RICHARDS,

     Plaintiff,                              Civil Action No.: 18-C-144-2
                                                Judge Thomas A. Bedell

v.

OCTANE ENVIRONMENTAL, LLC, an
Ohio limited liability company, TERENCE
SEIKEL, CRAIG STACY, and
JOSEPH SEIKEL,

     Defendants.

## SUMMONS

To the above-named Defendant:          OCTANE ENVIRONMENTAL, LLC

Service:                          SECRETARY OF STATE

Notice of Process Address:         45346 COURTVIEW TRL
                                  NOVI, MI, 48375

     IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Plaintiff's attorney, Raymond L. Harrell, Jr., whose address is Flaherty Sensabaugh Bonasso PLLC, 200 Capitol Street, P.O. Box 3843, Charleston, West Virginia 25338-3843, an answer, including any related counterclaims you may have to the Complaint filed against you in the above styled civil action, a true copy of which is herewith delivered to you. You are required to serve your answer within thirty (30) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above styled civil action.

Dated: _7-18-18_

                                 _albert F. Marano_
                                 **Clerk of Harrison County Circuit Court**

                      By: _C L Sharpe_



**Flaherty** ℠

FLAHERTY | SENSABAUGH | BONASSO   PLLC

CHARLESTON
CLARKSBURG
MORGANTOWN
WHEELING

Richard R. Marsh, Esq.
rmarsh@flahertylegal.com
304-624-5687

July 17, 2018

Harrison County Circuit Clerk
Albert Marano
Harrison County Courthouse
301 West Main Street
Clarksburg, WV 26301-2967

> Re:   ***Rick Richards v. Octane Environmental, LLC, an Ohio Limited Liability***
> ***Company, Terrance Seikel, Craig Stacy, and Joseph Seikel***
> **Circuit Court of Harrison County, West Virginia**
> **Civil Action No.: 18-C-144-2**

Dear Clerk Marano:

Enclosed please find nine copies of the ***Complaint***, and a ***Civil Cover Sheet*** for service in the above-styled civil action. Enclosed is Check No.1059 made payable to the Secretary of State in the amount of $80.00 for service.

Your cooperation is greatly appreciated. Should you have any questions, please do not hesitate to contact me. Thank you for your attention to this matter.

Sincerely,

Richard R. Marsh

RRM/cm3
Enclosures
11619.52129
C3256600.DOCX

## IN THE CIRCUIT COURT OF HARRISON COUNTY, WEST VIRGINIA

I.   STYLE OF CASE:

| | |
|---|---|
| PLAINTIFF: Rick Richards | CASE NUMBER: |
| DEFENDANTS: Octane Environmental, LLC, an Ohio Limited Liability Company, Terrance Seikel, Craig Stacy and Joseph Seikel | 18-C-144-2 |

II.   TYPE OF CASE:

| TORTS | OTHER | CIVIL |
|---|---|---|
| O Asbestos | O Adoption | O Appeal from Magistrate Court |
| O Professional Malpractice | O Contract | O Petition for Modification of Magistrate Sentence |
| O Personal Injury | O Real Property | O Miscellaneous Civil |
| O Product Liability | O Mental Health | ☑ Other |
| O Other Tort | O Appeal of Administrative Agency | O |

III.   JURY DEMAND:      ☑ Yes  O No

CASE WILL BE READY FOR TRIAL BY (MONTH/YEAR) **Unknown at this time**

IV.   DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS DUE TO A DISABILITY OR AGE     O YES  ☑ NO

IF YES, PLEASE SPECIFY:
O Wheelchair accessible hearing room and other facilities
O Interpreter or other auxiliary aid for the hearing impaired
O Reader or other auxiliary aid for the visually impaired
O Spokesperson or other auxiliary aid for the speech impaired
O Other:_____

Attorney Name:   *Richard R. Marsh, WVSB #10877*
                 *Christopher Brumley, WVSB# 7697*
                 *W. Scott Evans, WVSB# 5850*
                 *Raymond L. Harrell, Jr. WVSB# 12995*
Firm:  *Flaherty Sensabaugh Bonasso PLLC*

Address: *200 Capitol Street, P.O. Box 3843*
*Charleston, West Virginia 25338-3843*
Telephone:  *(304) 345-0200*

*Representing:*
☑ *Plaintiff – Rick Richards*
O *Defendant*
O *Cross-Complainant*  O *Third-Party Defendant*

*Dated:  May 24, 2018*

Richard R. Marsh, Counsel for Rick Richards

Plaintiff: Rick Richards _____ , et al   Case Number: 18-C-144-2

vs.

Defendant: Octane Environmental, LLC
an Ohio Limited Liability Company et al

## CIVIL CASE INFORMATION STATEMENT
## DEFENDANT(S) CONTINUATION PAGE

Octane Environmental, LLC
Defendant's Name

45346 Courtview Trl
Street Address

Novi, MI 48375
City, State, Zip Code

Days to Answer: 30

Type of Service: Secretary of State

---

Terence Seikel
Defendant's Name

2766 Castlemartin Court
Street Address

Oakland Township, MI 48306
City, State, Zip Code

Days to Answer: 30

Type of Service: Secretary of State

---

Craig Stacy
Defendant's Name

1080 Top of the Hill Rd
Street Address

Akron, OH 44333
City, State, Zip Code

Days to Answer: 30

Type of Service: Secretary of State

---

Joseph Seikel
Defendant's Name

45346 Courtview Trl
Street Address

Novi, MI 48375
City, State, Zip Code

Days to Answer: 30

Type of Service: Secretary of State

---

Defendant's Name

Street Address

City, State, Zip Code

Days to Answer:

Type of Service:

---

Defendant's Name

Street Address

City, State, Zip Code

Days to Answer:

Type of Service:

---

Defendant's Name

Street Address

City, State, Zip Code

Days to Answer:

Type of Service:

---

SCA-C-100:  Civil Case Information Statement-Defendant(s) Continuation Page                Revision Date: 12/2015

IN THE CIRCUIT COURT OF HARRISON COUNTY, WEST VIRGINIA

RICK RICHARDS,

      Plaintiff,

v.

OCTANE ENVIRONMENTAL, LLC, an
Ohio limited liability company, TERENCE
SEIKEL, CRAIG STACY, and
JOSEPH SEIKEL,

      Defendants.

Civil Action No.: _18- C -144-2_

Judge: _Bedell_

## COMPLAINT

COMES NOW Plaintiff, Rick Richards ("Plaintiff"), by counsel, Christopher A. Brumley, W. Scott Evans, Richard R. Marsh, Raymond L. Harrell, Jr., and the law firm of Flaherty Sensabaugh Bonasso PLLC, and hereby files this Complaint against Defendants, Octane Environmental, LLC, Terence Seikel, Joseph Seikel, and Craig Stacy (sometimes collectively, "Defendants"), and allege as follows:

### PARTIES

1.    Plaintiff s is, and was at all times relevant to this action, a West Virginia resident and citizen of Monongalia County, West Virginia. Plaintiff was employed by Defendant Octane in the position of General Manager until May 2018. Plaintiff was also promised, and is owed, an ownership interest in Defendant Octane as described herein.

2.    Defendant Octane Environmental, LLC ("Defendant Octane" or "Octane") is, and was at all times relevant to this action, an Ohio limited liability company with its principal office in Bridgeport, West Virginia.

3.    Upon information and belief, Defendant Terence Seikel ("Defendant Terence Seikel") is, and was at all times relevant to this action, a member and the majority shareholder of

1

Defendant Octane, and a resident and citizen of Oakland County, Michigan. Plaintiff reported to Defendant Terence Seikel during his time as General Manager of Defendant Octane.

4.      Upon information and belief, Defendant Joseph Seikel ("Defendant Joseph Seikel") is, and was at all times relevant to this action, a member and employee of Defendant Octane and is a resident and citizen of Oakland County, Michigan.

5.      Upon information and belief, Defendant Craig Stacy ("Defendant Stacy") is, and was at all times relevant to this action, a member and minority shareholder of Defendant Octane, and is a resident and citizen of Summit County, Ohio. Plaintiff reported to Defendant Terence Seikel during his time as General Manager of Defendant Octane.

## JURISDICTION AND VENUE

6.      Jurisdiction is appropriate pursuant to West Virginia Code Section 51-2-2 as the amount in controversy in this action exceeds two thousand five hundred Dollars ($2,500.00).

7.      Pursuant to West Virginia Code Section 56-1-1(a), venue is proper in this Court because Defendant Octane is a limited liability company whose principal office is located in Harrison County, West Virginia. Further, the causes of action at issue arose, at least in part, in Harrison County, West Virginia.

## STATEMENT OF FACTS

8.      From approximately October 2012 to July 2016, Plaintiff was employed by a company known as Extreme Plastics Plus, Inc. ("Extreme Plastics"). Through his employment with Extreme Plastics and his prior experience in the oil and gas services industry, Plaintiff developed a substantial book of customer business by providing environmental containment products and services.

9.      In or about June 2016, Plaintiff was introduced to Defendant Stacy, Defendant Terence Seikel, and others, who identified themselves as investors looking to form and develop a new business for the purpose of providing environmental containment products and services in the oil and gas industry (hereafter referred to collectively as the "Octane Owners"). The new business was Defendant Octane Environmental, LLC.

10.     Shortly thereafter, Defendants Stacy and Terence Seikel offered Plaintiff: 1) an initial 2.5% equity partner ownership in Octane with the potential to receive up to 5% equity partner ownership based on performance, to be paid out upon the sale of Octane; 2) at-will employment by Octane as its General Manager; 3) an annual salary; 4) participation in a profit-sharing program under which Plaintiff would receive a certain percentage of Octane's profits, to be paid on a monthly basis; and 5) other fringe benefits such as insurance and vacation time. In exchange for the foregoing promises, Plaintiff agreed to: 1) leave his employment with Extreme Plastics and begin serving as General Manager of Octane; 2) solicit or attempt to solicit his existing customers from Extreme Plastics to become customers of Octane and otherwise be responsible for developing Octane's oil and gas business; and 3) recruit other employees in the industry to become employed by Octane.

11.     In reliance upon the promises made by Defendants Stacy and Terence Seikel, Plaintiff began working with Defendants Stacy and Terence Seikel to form and develop Octane as its General Manager, and began receiving his promised salary at that time. Plaintiff was involved in several aspects of the formation and establishment of Octane.

12.     Plaintiff was an at will employee at all times during his employment relationship with Octane.

3

13.    Plaintiff also did not enter into any form of non-solicitation or non-compete agreement in connection with his employment by Defendant Octane. Plaintiff also refused Defendants' later request for him to enter into a non-solicitation or non-compete agreement. Plaintiff's continued employment with Octane was never conditioned on his execution of a non-solicitation or non-compete agreement.

14.    Due to the Octane Owners' lack of knowledge, skill, or experience in the oil and gas industry, the Octane Owners relied upon Plaintiff to develop almost all of Octane's business and customer base. During June 2016 and the proceeding months, Plaintiff successfully developed Octane's business and successfully solicited numerous of his former customers at Extreme Plastics to become customers of Defendant Octane, resulting in significant profits for Defendant Octane.

15.    Throughout his tenure as General Manager, Plaintiff brought several items of equipment personally owned by him to be used by Defendant Octane and its employees. This equipment included trailers, a saw, water pumps, welders, and several other items valued at approximately $30,000.00.

16.    In his capacity as General Manager, Plaintiff exercised the authority to hire and terminate Octane employees. Plaintiff was not required to obtain approval from the Octane Owners before hiring or terminating employees of Octane.

17.    Plaintiff successfully recruited several employees to become employed by Defendant Octane during his tenure as General Manager. One such recruit was Ernest Richards II.

18.    During October 2017, Ernest Richards II was hired by Defendant Octane in the position of General Manager/Ops Manager of Octane's Water Transfer Department. In this

capacity, Ernest Richards II was tasked with the establishment, formation, and execution of Defendant Octane's new Water Transfer Department.

19.     As General Manager of Octane, Plaintiff was in charge of hiring Ernest Richards II and served as his immediate supervisor.

20.     On April 27, 2018, Ernest Richards II submitted his two weeks' notice of voluntary termination of employment to Plaintiff, his supervisor. Ernest Richards II cited his inability to adequately perform his required job duties as a result of the Octane Owners' unwillingness to purchase the proper equipment and parts needed to do so as the reason for his resignation.

21.     Plaintiff did not notify the Octane Owners of Ernest Richards II's submission of his two weeks' notice because 1) he was not required to do so, and 2) he hoped he would be able to convince Ernest Richards II to stay at Octane.

22.     From July 22, 2016 until May 7, 2018, Plaintiff successfully and satisfactorily performed his duties as General Manager of Defendant Octane. As a direct and proximate result of Plaintiff's performance, Defendant Octane generated significant revenue and profits during this time.

23.     From July 22, 2016 until May 7, 2018, Plaintiff never received any verbal or written discipline or reprimand, for any reason, by his immediate supervisors at Octane.

24.     Despite Plaintiff's flawless management and performance record and his lack of any discipline, Plaintiff was notified by Defendant Terence Seikel on May 7, 2018 that he would be demoted from General Manager to the position of Business Development. He was also notified that Johnny Goff ("Mr. Goff") had been hired to essentially replace Plaintiff and assume

the role of Chief Operating Officer. No reason or explanation for Plaintiff's sudden and unexpected demotion was provided to him during this conversation.

25.     On May 9, 2018, Mr. Goff was present at the premises of Octane, and Plaintiff was tasked with introducing Mr. Goff to employees. On the same date, Mr. Goff immediately assumed the position of Chief Operating Officer of Octane. In this capacity, Mr. Goff became Plaintiff's immediate supervisor.

26.     Two days later, on the morning of May 11, 2018, Plaintiff was asked to step outside of the main office at Octane by its Human Resources representative, Alyssa Larry. During the conversation, Octane employees Amanda Hunt and Aaron Giles were led out of the building by Mr. Goff, and Plaintiff was invited in.

27.     Once back inside the building, Mr. Goff shut and locked the door, and informed Plaintiff that he was suspended from his employment with Octane, effective immediately, for "illegal activity."

28.     Plaintiff asked exactly what illegal activity he was being suspended for since he had committed no such activity, and was told by Mr. Goff only that Plaintiff's suspected illegal activity was under investigation.

29.     During this conversation, Plaintiff was informed that his computer and company vehicle had been confiscated by management, that his suspension would last for one week, and that Plaintiff was not permitted on the Octane premises during the suspension period.

30.     After this conversation occurred, Plaintiff was required to request a ride home from his brother Jason Richards, also an Octane employee, since Mr. Goff and the Octane management had confiscated his company vehicle. Despite not displaying any angered, violent, or otherwise indignant behavior after his conversation with Mr. Goff, Plaintiff was instructed and

made to leave the Octane premises in the plain view of his fellow employees and former subordinates.

31.     On May 12, 2018, Plaintiff submitted his resignation of employment with Octane to Defendant Terence Seikel.

32.     Following his resignation, Plaintiff was informed by several individuals that Defendants have made, and continue to make, false and defamatory statements about Plaintiff to certain Octane employees and customers. Upon information and belief, these statements include but are not necessarily limited to the following: that Plaintiff engaged in illegal activity; that Plaintiff stole money from Octane during his employment and used said money to start a new company; that Plaintiff allowed his brother(s) to work there while simultaneously working for a competitor; and that Plaintiff was working for a competing company while at Octane.

33.     By virtue of his resignation of employment with Octane, Plaintiff made a request to Defendants for the return of his personal property described herein, which remains in the possession and use of Octane. This request has been ignored by Octane, and Plaintiff continues to suffer from the loss of use of his personal property. Octane has neither compensated nor offered to compensate Plaintiff for the use or retention of Plaintiff's personal property.

34.     At no point during his employment with Octane from July 22, 2016 to May 12, 2018 did Plaintiff receive any of his promised ownership interest in Octane. Further, Plaintiff never received any of the promised profit-sharing of Octane during that time.

35.     At no point during his employment with Octane from July 22, 2016 to May 12, 2018 did Plaintiff: 1) turn any customers away from Octane; 2) independently perform work for any customer for his own personal benefit or to the detriment of Octane; 3) use Octane's property or business for any personal advantage or to derive any personal benefit other than his

promised salary as an Octane employee; 4) derive any secret profits by virtue of the employment relationship with Octane; or 5) work for any competitor of Octane or any other company.

36.     Plaintiff never entered into any non-solicitation or non-compete agreement with Defendant Octane or the Octane Owners.

37.     Despite the foregoing, Plaintiff received correspondence from counsel for Defendant Octane, attached as **Exhibit A**, erroneously and libelously accusing Plaintiff of violating various laws by the committing the following acts:

   a.   Violating fiduciary duties owed to Octane;

   b.   Working for competing companies both while employed by Octane and after the termination of the employment relationships with Octane

   c.   Using Octane's confidential information in a competing business both while employed by Octane and after the termination of the employment relationship;

   d.   Misappropriating Octane's trade secrets; and

   e.   Allowing family members to be hired at "inflated rates" and permitting the same to work for a competitor.

38.     As shown, the correspondence from counsel for Defendant Octane contains a demand for Plaintiff to "cease and desist" certain activities, and also threatens formal legal action.

## LEGAL CLAIMS

## COUNT I: DECLARATORY JUDGMENT AGAINST DEFENDANTS

39.     Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

40.     Pursuant to the West Virginia Declaratory Judgment Act, West Virginia Code §55-13-1 and Rule 57 of the West Virginia Rules of Civil Procedure, "the courts of record of the State of West Virginia shall have the power to declare rights, status and other legal relations whether or not further relief is or could be claimed."

41.     As stated above, Plaintiff was at-will employees of Octane, and Plaintiff never entered into any non-solicitation or non-compete agreement with Defendant Octane or the Octane Owners.

42.     Defendant Octane's false allegations that Plaintiff have and are currently "using Octane's protected trade secret information" and that Plaintiff are "unfairly competing with Octane in violation of state and federal law" may impair or unreasonably restrict Plaintiff's ability to engage in employment throughout the United States and may constitute tortious interference with Plaintiff's business relationships with future, prospective, or current employers.

43.     As such, Plaintiff demands the following:

    a.   A declaratory judgment that there are no enforceable restrictive covenants affecting or restricting Plaintiff's ability to engage in employment in the future in any trade or profession and in any geographical area;

    b.   A declaratory judgment that any fiduciary duty allegedly owed by Plaintiff to Defendants was immediately extinguished upon termination of Plaintiff's employment with Octane, and that Plaintiff does not owe any fiduciary duty to Octane or any other Defendants;

    c.   A declaratory judgment that Plaintiff is not prohibited from engaging in any business which competes or may compete with Octane since Plaintiff is not and

has never been bound by any non-solicitation agreement or non-compete agreement with Octane or Defendants;

d.  A declaratory judgment that Plaintiff has not engaged in any of the other wrongdoing or illegal activities alleged by counsel for Octane;

e.  An immediate expedited hearing; and,

f.  That Plaintiff have such other and further equitable relief or decree as may be granted or necessary.

## COUNT II: BREACH OF CONTRACT

44.    Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

45.    Plaintiff formed a valid oral contract with Defendant Octane and the Octane Owners, as described in Paragraphs 11-13 above.

46.    Plaintiff performed all or substantially all of the obligations imposed under the oral contract with Defendants.

47.    Defendants materially breached the oral contract by failing to 1) conferring the promised equity partner ownership interest in Octane to Plaintiff; and 2) failing to provide any of the promised sharing of Octane's profits with Plaintiff.

48.    As a result of Defendants' breach, Plaintiff has suffered and continues to suffer monetary damages.

49.    Defendants' material breach of the oral agreement was and continues to be the actual and proximate cause of the damages suffered by Plaintiff.

## COUNT III: DEFAMATION

50.     Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

51.     Defendants have intentionally, willfully, and negligently published false, defamatory, and non-privileged communications to third persons specifically referencing the Plaintiff and which statements have been injurious to his personal and professional reputation.

52.     Upon information and belief, the false statements made by Defendants  have included, among others, accusations that: 1) Plaintiff engaged in illegal activity while employed by Octane; and 2) that Plaintiff stole money from Octane during his employment.

53.     As a direct and proximate result of such wrongful and unlawful conduct, Plaintiff has sustained damages to his personal and professional reputation, a loss of dignity, humiliation, embarrassment as well as such other damages as are more fully described herein.

## COUNT IV: CONVERSION

54.     Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

55.     Defendants currently exercise dominion and control over the personal property of Plaintiff described herein in contravention of Plaintiff's rights.

56.     Plaintiff has attempted to reclaim the personal property, but Defendants refuse to allow Plaintiff access to the Octane property to retrieve the personal property, and further refuse to return the personal property to Plaintiff.

57.     Plaintiff has suffered, and continues to suffer, damages in the form of money damages, and lost use of his personal property described herein.

11

## COUNT V: VIOLATION OF THE WEST VIRGINIA WAGE PAYMENT AND COLLECTION ACT

58.     Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

59.     The West Virginia Wage Payment and Collection Act ("WVWPCA"), states that the term "wages," as used in the WVWPCA, includes "accrued fringe benefits capable of calculation and payable directly to an employee[.]" W. Va. Code § 21-5-1(c).

60.     The WVWPCA defines "fringe benefits" as "any benefit provided an employee or group of employees by an employer, or which is required by law, and **includes regular vacation, graduated vacation, floating vacation** . . . " W. Va. Code § 21-5-1(l) (emphasis added).

61.     Pursuant to the requirements of the WVWPCA, "whenever an employee quits or resigns from employment, the person, firm or corporation shall pay the employee's **wages due** for work that the employee performed prior to the separation of employment **on or before the next regular payday** on which the wages would otherwise be due and payable." W. Va. Code § 21-5-4(b) (emphasis added).

62.     At the time of Plaintiff's separation of employment from Defendant Octane, Plaintiff had accrued, and Defendant Octane owed to him, nine weeks of earned vacation time.

63.     Because Plaintiff was a salaried employee of Octane, his nine weeks of accrued vacation time are "fringe benefits capable of calculation" and thus are considered "wages due" under the WVWPCA.

64.     Additionally, Plaintiff was never paid for working on the dates of July 22, 2016 and July 23, 2016, despite his salaried position.

65.     To date, Defendants have failed and/or refused to pay Plaintiff's accrued vacation time and past due wages in violation of the WVWPCA.

66.     Plaintiff has suffered, and continues to suffer, damages in the form of money damages as a result of Defendants' withholding and refusal to pay Plaintiff his accrued vacation time and wages due.

67.     Further, because Octane failed to timely pay Plaintiff in accordance with the requirements set forth in the WVWPCA as described above, Plaintiff is entitled to recover the amount owed to Plaintiff and "two times that unpaid amount as liquidated damages." W. Va. Code § 21-5-4(e).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A.     The declaratory judgments requested herein;

B.     Compensatory damages for Defendants' breaches of contract to Plaintiff;

C.     Pre-judgment interest and post-judgment interest on Plaintiff's breach of contract claims;

D.     Compensatory damages for Plaintiff's accrued vacation time and other wages due pursuant to the WVWPCA;

E.     Liquidated damages in an amount equal to two times the unpaid amount owed to Plaintiff by Defendants pursuant to the WVWPCA;

F.     An injunction ordering the immediate return of Plaintiff's personal property by Defendants or, in the alternative, compensatory damages in an amount equal to the fair market value of Plaintiff's personal property;

G.      Compensatory damages for the damage caused to Plaintiff's personal and

professional reputation as well as his loss of dignity, humiliation, and

embarrassment caused by Defendants' defamatory statements;

H.      Reasonable attorneys' fees, forum fees and costs incurred in prosecuting this

action; and

I.      Such other and further relief as this Court deems just, proper, and equitable.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES.**

Respectfully Submitted,

**RICK RICHARDS**

By Counsel,

Christopher Brumley, Esq. (W. Va. Bar No. 7697)
W. Scott Evans (W. Va. Bar No. 5850)
Richard R. Marsh (W Va. Bar No. 10877)
Raymond L. Harrell, Jr. (W. Va. Bar No. 12995)
**FLAHERTY SENSABAUGH BONASSO** PLLC
200 Capitol Street
Post Office Box 3843
Charleston, West Virginia 25338-3843
304-345-0200 Telephone
304-345-0260 Facsimile
cbrumley@flahertylegal.com
wsevans@flahertylegal.com
rmarsh@flahertylegal.com
rharrell@flahertylegal.com
*Attorneys for Plaintiff*

# EXHIBIT A



A business advisory and advocacy law firm*

McDonald Hopkins PLC
39533 Woodward Avenue
Suite 318
Bloomfield Hills, MI 48304

t  1 248 646 5070
f  1 248 646 5075

Direct Dial: 248.220.1355
E-mail: jbputreus@mcdonaldhopkins.com

May 16, 2018

**VIA FEDEX OVERNIGHT
AND E-MAIL (rickrichards1975@gmail.com)**

Rick Richards
2003 Whitetail Court
Morgantown WV 26508

Re:  Octane Environmental, LLC

Dear Mr. Richards:

The law firm of McDonald Hopkins LLC represents the interests of Octane Environmental, LLC ("Octane") regarding certain suspected illegal acts related to your recent departure from Octane. Octane is investigating this matter and will take any and all necessary legal action to protect Octane's rights and remedies.

Under West Virginia law, an employee owes a duty of good faith and loyalty to his employer's interests. *See Recycling, LLC v. Hughart,* 2008 WL 5503782 (W.Va. Cir.Ct. Kanawha Cty, March 11, 2008), citing *Affiliated Construction Trades Foundation v. Vieweg,* 520 S.E.2d 854, 868 (W.Va. 1999). An employee is considered to be in breach of his duty of loyalty if he competes with his employer. *See id.* A fiduciary duty is defined as "a duty to act for someone else's benefit, while subordinating one's personal interest to that of the other person." *Id.,* citing *Elmore v. State Farm Mutual Auto Insurance Company,* 504 S.E. 2d 893, 898 (W.Va. 1998). In such cases, damages are typically the profits earned, in addition to forfeiture of compensation earned during the period of disloyalty. It has come to our attention that you may have violated your fiduciary duties owed to Octane, as well as various other state and federal laws, by working for a competing company while employed by Octane. Specifically, upon information and belief, you ran your new competing business while employed by Octane and you used and continue to use Octane's confidential information in your competing business. Such actions constitute, among other things, a breach of your duty of loyalty, and potentially a violation of other state and federal laws.

We also believe that you may be improperly using Octane's confidential customer contacts in your new competing business. A customer list is entitled to trade secret protection under state and federal law. *See* W.Va. Code Ann. § 47-22-1; Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* We believe you may have certain files and information that contain Octane's customer information, such as contact information, pricing, and customer preferences. We have engaged a forensic specialist to assist in our investigation. Indeed, the compilation of this information is not known outside of Octane's business and it has taken years for Octane to compile this

Rick Richards
May 16, 2018
Page 2

information. Octane's confidential customer information constitutes a protectable trade secret. We have reason to believe that you, your brothers, and your new competing business are currently misappropriating Octane's trade secret information by contacting and/or performing work for Octane's customers, which may violate W.Va. Code Ann. § 47-22-1 and the Defend Trade Secrets Act, 18 U.S.C. § 1836, et seq.

We also suspect that you hired various family members, whom you have now engaged in your competing business, at inflated rates by fabricating the amounts that such family members earned at their previous places of employment. This action has cost Octane thousands of dollars. Based upon information and belief, you allowed your brother, Ernie Richards, to continue to collect wages from Octane while he was employed by a competitor.

Based upon the foregoing and our continued investigation, Octane may take legal action against you, including, but not limited to, seeking an injunction to prevent you from unfairly competing with Octane in violation of state and federal law, disgorgement of all wages paid to you, and remedies under W. Va. Code Ann. § 47-22-1 et. seq., including punitive damages.

*In order to avoid litigation, you must at once cease and desist using Octane's protected trade secret information to contact Octane's customers. You, your brothers, or your new competing business may not perform work for Octane's customers. You must also immediately return any and all information and property of Octane in your possession.*

In addition, you are hereby on notice that you must preserve all potential evidence related to this matter. Specifically, you must not destroy, delete, modify or discard any documents, email messages, files or information, in electronic, paper or any other form or media, related to this matter. Such documents include, but are not limited to, documents related to your former employment with Octane, the business and/or operations of Octane, Octane's customers and/or employees, as well as the specific matters set forth above. In addition, you are instructed not to reformat your home computers or electronic devices, or change or delete any related information contained therein. If you ignore this directive, Octane will seek any and all available sanctions against you.

Please respond to me in writing regarding the allegations in this letter no later than **Monday, May 21, 2018.** Should you have any questions regarding the foregoing, please do not hesitate to contact me or have your attorney contact me.

Sincerely,

James J. Boutrous, II

McDonald Hopkins

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305



**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

USPS CERTIFIED MAIL™



9214 8901 1251 3410 0002 3544 32

TERENCE SEIKEL
2766 CASTLEMARTIN COURT
OAKLAND TOWNSHIP, MI 48306

**Control Number:** 222696

**Defendant:** TERENCE SEIKEL
2766 CASTLEMARTIN COURT
OAKLAND TOWNSHIP, MI 48306 US

**County:** Harrison

**Civil Action:** 18-C-144-2

**Certified Number:** 92148901125134100002354432

**Service Date:** 7/19/2018

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office**.*

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

IN THE CIRCUIT COURT OF HARRISON COUNTY, WEST VIRGINIA

RICK RICHARDS,

     Plaintiff,

v.

OCTANE ENVIRONMENTAL, LLC, an
Ohio limited liability company, TERENCE
SEIKEL, CRAIG STACY, and
JOSEPH SEIKEL,

     Defendants.

Civil Action No.: 18-C-144-2
Judge Thomas A. Bedell

## SUMMONS

| | |
|---|---|
| To the above-named Defendant: | TERENCE SEIKEL |
| Service: | SECRETARY OF STATE |
| Notice of Process Address: | 2766 CASTLEMARTIN COURT OAKLAND TOWNSHIP, MI, 48306 |

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Plaintiff's attorney, Raymond L. Harrell, Jr., whose address is Flaherty Sensabaugh Bonasso PLLC, 200 Capitol Street, P.O. Box 3843, Charleston, West Virginia 25338-3843, an answer, including any related counterclaims you may have to the Complaint filed against you in the above styled civil action, a true copy of which is herewith delivered to you. You are required to serve your answer within thirty (30) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above styled civil action.

Dated:  7-18-18

*Albert J. Marano*
**Clerk of Harrison County Circuit Court**

By:  *C L Sharpe*



**Flaherty** ℠

FLAHERTY I SENSABAUGH I BONASSO PLLC

CHARLESTON
CLARKSBURG
MORGANTOWN
WHEELING

Richard R. Marsh, Esq.
rmarsh@flahertylegal.com
304-624-5687

July 17, 2018

Harrison County Circuit Clerk
Albert Marano
Harrison County Courthouse
301 West Main Street
Clarksburg, WV 26301-2967

Re: ***Rick Richards v. Octane Environmental, LLC, an Ohio Limited Liability Company, Terrance Seikel, Craig Stacy, and Joseph Seikel***
***Circuit Court of Harrison County, West Virginia***
***Civil Action No.: 18-C-144-2***

Dear Clerk Marano:

Enclosed please find nine copies of the ***Complaint***, and a ***Civil Cover Sheet*** for service in the above-styled civil action.  Enclosed is Check No.1059 made payable to the Secretary of State in the amount of $80.00 for service.

Your cooperation is greatly appreciated. Should you have any questions, please do not hesitate to contact me. Thank you for your attention to this matter.

Sincerely,

Richard R. Marsh

RRM/cm3
Enclosures
11619.52129
C3256600.DOCX

FILED IN 15TH
CIRCUIT COURT
2018 JUL 17  P 4: 05

IN THE CIRCUIT COURT OF HARRISON COUNTY, WEST VIRGINIA

I.   STYLE OF CASE:

| PLAINTIFF: Rick Richards | CASE NUMBER: |
|---|---|
| DEFENDANTS: Octane Environmental, LLC, an Ohio Limited Liability Company, Terrance Seikel, Craig Stacy and Joseph Seikel | 18-C-144-2 |

II.   TYPE OF CASE:

| TORTS | OTHER | CIVIL |
|---|---|---|
| O Asbestos | O Adoption | O Appeal from Magistrate Court |
| O Professional Malpractice | O Contract | O Petition for Modification of Magistrate Sentence |
| O Personal Injury | O Real Property | O Miscellaneous Civil |
| O Product Liability | O Mental Health | ☑ Other |
| O Other Tort | O Appeal of Administrative Agency | O |

III.   JURY DEMAND:   ☑ Yes  O No

CASE WILL BE READY FOR TRIAL BY (MONTH/YEAR) **Unknown at this time**

IV.   DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS DUE TO A DISABILITY OR AGE   O YES  ☑ NO

IF YES, PLEASE SPECIFY:
O Wheelchair accessible hearing room and other facilities
O Interpreter or other auxiliary aid for the hearing impaired
O Reader or other auxiliary aid for the visually impaired
O Spokesperson or other auxiliary aid for the speech impaired
O Other:_____

Attorney Name:_ *Richard R. Marsh, WVSB #10877*
_____*Christopher Brumley, WVSB# 7697*
_____*W. Scott Evans, WVSB# 5850*
_____*Raymond L. Harrell, Jr. WVSB# 12995*
Firm:_ *Flaherty Sensabaugh Bonasso PLLC*

Address:*200 Capitol Street, P.O. Box 3843*
*Charleston, West Virginia 25338-3843*
Telephone:_ *(304) 345-0200*

*Representing.*
☑ *Plaintiff – Rick Richards*
O *Defendant*
O *Cross-Complainant* O *Third-Party Defendant*

*Dated:_ May 24, 2018*

Richard R. Marsh, Counsel for Rick Richards

Plaintiff: Rick Richards _____ , et al    Case Number: 18-C-144-2
vs.
Defendant: Octane Environmental, LLC,
an Ohio Limited Liability Company et al

## CIVIL CASE INFORMATION STATEMENT
### DEFENDANT(S) CONTINUATION PAGE

Octane Environmental, LLC
Defendant's Name

45346 Courtview Trl
Street Address                          Days to Answer: 30

Novi, MI  48375
City, State, Zip Code                   Type of Service: Secretary of State

---

Terence Seikel
Defendant's Name

2766 Castlemartin Court   Days to Answer: 30
Street Address

Oakland Township, MI 48306   Type of Service: Secretary of State
City, State, Zip Code

---

Craig Stacy
Defendant's Name

1080 Top of the Hill Rd
Street Address                          Days to Answer: 30

Akron, OH 44333
City, State, Zip Code                   Type of Service: Secretary of State

---

Joseph Seikel
Defendant's Name

45346 Courtview Trl
Street Address                          Days to Answer: 30

Novi, MI 48375
City, State, Zip Code                   Type of Service: Secretary of State

---

Defendant's Name

Street Address                          Days to Answer: _____

City, State, Zip Code                   Type of Service: _____

---

Defendant's Name

Street Address                          Days to Answer: _____

City, State, Zip Code                   Type of Service: _____

---

Defendant's Name

Street Address                          Days to Answer: _____

City, State, Zip Code                   Type of Service: _____

---

SCA-C-100:  Civil Case Information Statement-Defendant(s) Continuation Page        Revision Date: 12/2015

IN THE CIRCUIT COURT OF HARRISON COUNTY, WEST VIRGINIA

RICK RICHARDS,

      Plaintiff,                         Civil Action No.: _18- C -144-2_

v.                                  Judge: _Bedell_

OCTANE ENVIRONMENTAL, LLC, an
Ohio limited liability company, TERENCE
SEIKEL, CRAIG STACY, and
JOSEPH SEIKEL,

      Defendants.

## COMPLAINT

COMES NOW Plaintiff, Rick Richards ("Plaintiff"), by counsel, Christopher A.

Brumley, W. Scott Evans, Richard R. Marsh, Raymond L. Harrell, Jr., and the law firm of

Flaherty Sensabaugh Bonasso PLLC, and hereby files this Complaint against Defendants, Octane

Environmental, LLC, Terence Seikel, Joseph Seikel, and Craig Stacy (sometimes collectively,

"Defendants"), and allege as follows:

### PARTIES

1.      Plaintiff s is, and was at all times relevant to this action, a West Virginia resident

and citizen of Monongalia County, West Virginia. Plaintiff was employed by Defendant Octane

in the position of General Manager until May 2018. Plaintiff was also promised, and is owed, an

ownership interest in Defendant Octane as described herein.

2.      Defendant Octane Environmental, LLC ("Defendant Octane" or "Octane") is, and

was at all times relevant to this action, an Ohio limited liability company with its principal office

in Bridgeport, West Virginia.

3.      Upon information and belief, Defendant Terence Seikel ("Defendant Terence

Seikel") is, and was at all times relevant to this action, a member and the majority shareholder of

1

Defendant Octane, and a resident and citizen of Oakland County, Michigan. Plaintiff reported to

Defendant Terence Seikel during his time as General Manager of Defendant Octane.

4.       Upon information and belief, Defendant Joseph Seikel ("Defendant Joseph

Seikel") is, and was at all times relevant to this action, a member and employee of Defendant

Octane and is a resident and citizen of Oakland County, Michigan.

5.       Upon information and belief, Defendant Craig Stacy ("Defendant Stacy") is, and

was at all times relevant to this action, a member and minority shareholder of Defendant Octane,

and is a resident and citizen of Summit County, Ohio.  Plaintiff reported to Defendant Terence

Seikel during his time as General Manager of Defendant Octane.

## JURISDICTION AND VENUE

6.       Jurisdiction is appropriate pursuant to West Virginia Code Section 51-2-2 as the

amount in controversy in this action exceeds two thousand five hundred Dollars ($2,500.00).

7.       Pursuant to West Virginia Code Section 56-1-1(a), venue is proper in this Court

because Defendant Octane is a limited liability company whose principal office is located in

Harrison County, West Virginia. Further, the causes of action at issue arose, at least in part, in

Harrison County, West Virginia.

## STATEMENT OF FACTS

8.       From approximately October 2012 to July 2016, Plaintiff was employed by a

company known as Extreme Plastics Plus, Inc. ("Extreme Plastics").  Through his employment

with Extreme Plastics and his prior experience in the oil and gas services industry, Plaintiff

developed a substantial book of customer business by providing environmental containment

products and services.

2

9.      In or about June 2016, Plaintiff was introduced to Defendant Stacy, Defendant Terence Seikel, and others, who identified themselves as investors looking to form and develop a new business for the purpose of providing environmental containment products and services in the oil and gas industry (hereafter referred to collectively as the "Octane Owners"). The new business was Defendant Octane Environmental, LLC.

10.     Shortly thereafter, Defendants Stacy and Terence Seikel offered Plaintiff: 1) an initial 2.5% equity partner ownership in Octane with the potential to receive up to 5% equity partner ownership based on performance, to be paid out upon the sale of Octane; 2) at-will employment by Octane as its General Manager; 3) an annual salary; 4) participation in a profit-sharing program under which Plaintiff would receive a certain percentage of Octane's profits, to be paid on a monthly basis; and 5) other fringe benefits such as insurance and vacation time. In exchange for the foregoing promises, Plaintiff agreed to: 1) leave his employment with Extreme Plastics and begin serving as General Manager of Octane; 2) solicit or attempt to solicit his existing customers from Extreme Plastics to become customers of Octane and otherwise be responsible for developing Octane's oil and gas business; and 3) recruit other employees in the industry to become employed by Octane.

11.     In reliance upon the promises made by Defendants Stacy and Terence Seikel, Plaintiff began working with Defendants Stacy and Terence Seikel to form and develop Octane as its General Manager, and began receiving his promised salary at that time. Plaintiff was involved in several aspects of the formation and establishment of Octane.

12.     Plaintiff was an at will employee at all times during his employment relationship with Octane.

3

13.     Plaintiff also did not enter into any form of non-solicitation or non-compete agreement in connection with his employment by Defendant Octane. Plaintiff also refused Defendants' later request for him to enter into a non-solicitation or non-compete agreement. Plaintiff's continued employment with Octane was never conditioned on his execution of a non-solicitation or non-compete agreement.

14.     Due to the Octane Owners' lack of knowledge, skill, or experience in the oil and gas industry, the Octane Owners relied upon Plaintiff to develop almost all of Octane's business and customer base. During June 2016 and the proceeding months, Plaintiff successfully developed Octane's business and successfully solicited numerous of his former customers at Extreme Plastics to become customers of Defendant Octane, resulting in significant profits for Defendant Octane.

15.     Throughout his tenure as General Manager, Plaintiff brought several items of equipment personally owned by him to be used by Defendant Octane and its employees. This equipment included trailers, a saw, water pumps, welders, and several other items valued at approximately $30,000.00.

16.     In his capacity as General Manager, Plaintiff exercised the authority to hire and terminate Octane employees. Plaintiff was not required to obtain approval from the Octane Owners before hiring or terminating employees of Octane.

17.     Plaintiff successfully recruited several employees to become employed by Defendant Octane during his tenure as General Manager. One such recruit was Ernest Richards II.

18.     During October 2017, Ernest Richards II was hired by Defendant Octane in the position of General Manager/Ops Manager of Octane's Water Transfer Department. In this

4

capacity, Ernest Richards II was tasked with the establishment, formation, and execution of Defendant Octane's new Water Transfer Department.

19.     As General Manager of Octane, Plaintiff was in charge of hiring Ernest Richards II and served as his immediate supervisor.

20.     On April 27, 2018, Ernest Richards II submitted his two weeks' notice of voluntary termination of employment to Plaintiff, his supervisor. Ernest Richards II cited his inability to adequately perform his required job duties as a result of the Octane Owners' unwillingness to purchase the proper equipment and parts needed to do so as the reason for his resignation.

21.     Plaintiff did not notify the Octane Owners of Ernest Richards II's submission of his two weeks' notice because 1) he was not required to do so, and 2) he hoped he would be able to convince Ernest Richards II to stay at Octane.

22.     From July 22, 2016 until May 7, 2018, Plaintiff successfully and satisfactorily performed his duties as General Manager of Defendant Octane. As a direct and proximate result of Plaintiff's performance, Defendant Octane generated significant revenue and profits during this time.

23.     From July 22, 2016 until May 7, 2018, Plaintiff never received any verbal or written discipline or reprimand, for any reason, by his immediate supervisors at Octane.

24.     Despite Plaintiff's flawless management and performance record and his lack of any discipline, Plaintiff was notified by Defendant Terence Seikel on May 7, 2018 that he would be demoted from General Manager to the position of Business Development. He was also notified that Johnny Goff ("Mr. Goff") had been hired to essentially replace Plaintiff and assume

the role of Chief Operating Officer. No reason or explanation for Plaintiff's sudden and unexpected demotion was provided to him during this conversation.

25.    On May 9, 2018, Mr. Goff was present at the premises of Octane, and Plaintiff was tasked with introducing Mr. Goff to employees. On the same date, Mr. Goff immediately assumed the position of Chief Operating Officer of Octane. In this capacity, Mr. Goff became Plaintiff's immediate supervisor.

26.    Two days later, on the morning of May 11, 2018, Plaintiff was asked to step outside of the main office at Octane by its Human Resources representative, Alyssa Larry. During the conversation, Octane employees Amanda Hunt and Aaron Giles were led out of the building by Mr. Goff, and Plaintiff was invited in.

27.    Once back inside the building, Mr. Goff shut and locked the door, and informed Plaintiff that he was suspended from his employment with Octane, effective immediately, for "illegal activity."

28.    Plaintiff asked exactly what illegal activity he was being suspended for since he had committed no such activity, and was told by Mr. Goff only that Plaintiff's suspected illegal activity was under investigation.

29.    During this conversation, Plaintiff was informed that his computer and company vehicle had been confiscated by management, that his suspension would last for one week, and that Plaintiff was not permitted on the Octane premises during the suspension period.

30.    After this conversation occurred, Plaintiff was required to request a ride home from his brother Jason Richards, also an Octane employee, since Mr. Goff and the Octane management had confiscated his company vehicle. Despite not displaying any angered, violent, or otherwise indignant behavior after his conversation with Mr. Goff, Plaintiff was instructed and

made to leave the Octane premises in the plain view of his fellow employees and former subordinates.

31.    On May 12, 2018, Plaintiff submitted his resignation of employment with Octane to Defendant Terence Seikel.

32.    Following his resignation, Plaintiff was informed by several individuals that Defendants have made, and continue to make, false and defamatory statements about Plaintiff to certain Octane employees and customers. Upon information and belief, these statements include but are not necessarily limited to the following: that Plaintiff engaged in illegal activity; that Plaintiff stole money from Octane during his employment and used said money to start a new company; that Plaintiff allowed his brother(s) to work there while simultaneously working for a competitor; and that Plaintiff was working for a competing company while at Octane.

33.    By virtue of his resignation of employment with Octane, Plaintiff made a request to Defendants for the return of his personal property described herein, which remains in the possession and use of Octane. This request has been ignored by Octane, and Plaintiff continues to suffer from the loss of use of his personal property. Octane has neither compensated nor offered to compensate Plaintiff for the use or retention of Plaintiff's personal property.

34.    At no point during his employment with Octane from July 22, 2016 to May 12, 2018 did Plaintiff receive any of his promised ownership interest in Octane.  Further, Plaintiff never received any of the promised profit-sharing of Octane during that time.

35.    At no point during his employment with Octane from July 22, 2016 to May 12, 2018 did Plaintiff: 1) turn any customers away from Octane; 2) independently perform work for any customer for his own personal benefit or to the detriment of Octane; 3) use Octane's property or business for any personal advantage or to derive any personal benefit other than his

promised salary as an Octane employee; 4) derive any secret profits by virtue of the employment relationship with Octane; or 5) work for any competitor of Octane or any other company.

36.     Plaintiff never entered into any non-solicitation or non-compete agreement with Defendant Octane or the Octane Owners.

37.     Despite the foregoing, Plaintiff received correspondence from counsel for Defendant Octane, attached as **Exhibit A**, erroneously and libelously accusing Plaintiff of violating various laws by the committing the following acts:

a.   Violating fiduciary duties owed to Octane;

b.   Working for competing companies both while employed by Octane and after the termination of the employment relationships with Octane

c.   Using Octane's confidential information in a competing business both while employed by Octane and after the termination of the employment relationship;

d.   Misappropriating Octane's trade secrets; and

e.   Allowing family members to be hired at "inflated rates" and permitting the same to work for a competitor.

38.     As shown, the correspondence from counsel for Defendant Octane contains a demand for Plaintiff to "cease and desist" certain activities, and also threatens formal legal action.

## LEGAL CLAIMS

## COUNT I: DECLARATORY JUDGMENT AGAINST DEFENDANTS

39.     Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

8

40.    Pursuant to the West Virginia Declaratory Judgment Act, West Virginia Code §55-13-1 and Rule 57 of the West Virginia Rules of Civil Procedure, "'the courts of record of the State of West Virginia shall have the power to declare rights, status and other legal relations whether or not further relief is or could be claimed."

41.    As stated above, Plaintiff was at-will employees of Octane, and Plaintiff never entered into any non-solicitation or non-compete agreement with Defendant Octane or the Octane Owners.

42.    Defendant Octane's false allegations that Plaintiff have and are currently "using Octane's protected trade secret information" and that Plaintiff are "unfairly competing with Octane in violation of state and federal law" may impair or unreasonably restrict Plaintiff's ability to engage in employment throughout the United States and may constitute tortious interference with Plaintiff's business relationships with future, prospective, or current employers.

43.    As such, Plaintiff demands the following:

   a.  A declaratory judgment that there are no enforceable restrictive covenants affecting or restricting Plaintiff's ability to engage in employment in the future in any trade or profession and in any geographical area;

   b.  A declaratory judgment that any fiduciary duty allegedly owed by Plaintiff to Defendants was immediately extinguished upon termination of Plaintiff's employment with Octane, and that Plaintiff does not owe any fiduciary duty to Octane or any other Defendants;

   c.  A declaratory judgment that Plaintiff is not prohibited from engaging in any business which competes or may compete with Octane since Plaintiff is not and

has never been bound by any non-solicitation agreement or non-compete
agreement with Octane or Defendants;

d.  A declaratory judgment that Plaintiff has not engaged in any of the other
wrongdoing or illegal activities alleged by counsel for Octane;

e.  An immediate expedited hearing; and,

f.  That Plaintiff have such other and further equitable relief or decree as may be
granted or necessary.

## COUNT II: BREACH OF CONTRACT

44.    Plaintiff hereby incorporates and reasserts all of the previous allegations of this
Complaint.

45.    Plaintiff formed a valid oral contract with Defendant Octane and the Octane
Owners, as described in Paragraphs 11-13 above.

46.    Plaintiff performed all or substantially all of the obligations imposed under the
oral contract with Defendants.

47.    Defendants materially breached the oral contract by failing to 1) conferring the
promised equity partner ownership interest in Octane to Plaintiff; and 2) failing to provide any of
the promised sharing of Octane's profits with Plaintiff.

48.    As a result of Defendants' breach, Plaintiff has suffered and continues to suffer
monetary damages.

49.    Defendants' material breach of the oral agreement was and continues to be the
actual and proximate cause of the damages suffered by Plaintiff.

## COUNT III: DEFAMATION

50.     Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

51.     Defendants have intentionally, willfully, and negligently published false, defamatory, and non-privileged communications to third persons specifically referencing the Plaintiff and which statements have been injurious to his personal and professional reputation.

52.     Upon information and belief, the false statements made by Defendants have included, among others, accusations that: 1) Plaintiff engaged in illegal activity while employed by Octane; and 2) that Plaintiff stole money from Octane during his employment.

53.     As a direct and proximate result of such wrongful and unlawful conduct, Plaintiff has sustained damages to his personal and professional reputation, a loss of dignity, humiliation, embarrassment as well as such other damages as are more fully described herein.

## COUNT IV: CONVERSION

54.     Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

55.     Defendants currently exercise dominion and control over the personal property of Plaintiff described herein in contravention of Plaintiff's rights.

56.     Plaintiff has attempted to reclaim the personal property, but Defendants refuse to allow Plaintiff access to the Octane property to retrieve the personal property, and further refuse to return the personal property to Plaintiff.

57.     Plaintiff has suffered, and continues to suffer, damages in the form of money damages, and lost use of his personal property described herein.

11

## COUNT V: VIOLATION OF THE WEST VIRGINIA WAGE PAYMENT AND COLLECTION ACT

58.     Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

59.     The West Virginia Wage Payment and Collection Act ("WVWPCA"), states that the term "wages," as used in the WVWPCA, includes "accrued fringe benefits capable of calculation and payable directly to an employee[.]" W. Va. Code § 21-5-1(c).

60.     The WVWPCA defines "fringe benefits" as "any benefit provided an employee or group of employees by an employer, or which is required by law, and **includes regular vacation, graduated vacation, floating vacation** . . . " W. Va. Code § 21-5-1(l) (emphasis added).

61.     Pursuant to the requirements of the WVWPCA, "whenever an employee quits or resigns from employment, the person, firm or corporation shall pay the employee's **wages due** for work that the employee performed prior to the separation of employment **on or before the next regular payday** on which the wages would otherwise be due and payable." W. Va. Code § 21-5-4(b) (emphasis added).

62.     At the time of Plaintiff's separation of employment from Defendant Octane, Plaintiff had accrued, and Defendant Octane owed to him, nine weeks of earned vacation time.

63.     Because Plaintiff was a salaried employee of Octane, his nine weeks of accrued vacation time are "fringe benefits capable of calculation" and thus are considered "wages due" under the WVWPCA.

64.     Additionally, Plaintiff was never paid for working on the dates of July 22, 2016 and July 23, 2016, despite his salaried position.

65.    To date, Defendants have failed and/or refused to pay Plaintiff's accrued vacation time and past due wages in violation of the WVWPCA.

66.    Plaintiff has suffered, and continues to suffer, damages in the form of money damages as a result of Defendants' withholding and refusal to pay Plaintiff his accrued vacation time and wages due.

67.    Further, because Octane failed to timely pay Plaintiff in accordance with the requirements set forth in the WVWPCA as described above, Plaintiff is entitled to recover the amount owed to Plaintiff and "two times that unpaid amount as liquidated damages." W. Va. Code § 21-5-4(e).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A.    The declaratory judgments requested herein;

B.    Compensatory damages for Defendants' breaches of contract to Plaintiff;

C.    Pre-judgment interest and post-judgment interest on Plaintiff's breach of contract claims;

D.    Compensatory damages for Plaintiff's accrued vacation time and other wages due pursuant to the WVWPCA;

E.    Liquidated damages in an amount equal to two times the unpaid amount owed to Plaintiff by Defendants pursuant to the WVWPCA;

F.    An injunction ordering the immediate return of Plaintiff's personal property by Defendants or, in the alternative, compensatory damages in an amount equal to the fair market value of Plaintiff's personal property;

13

G.   Compensatory damages for the damage caused to Plaintiff's personal and professional reputation as well as his loss of dignity, humiliation, and embarrassment caused by Defendants' defamatory statements;

H.   Reasonable attorneys' fees, forum fees and costs incurred in prosecuting this action; and

I.   Such other and further relief as this Court deems just, proper, and equitable.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES.**

Respectfully Submitted,

**RICK RICHARDS**

By Counsel,

Christopher Brumley, Esq. (W. Va. Bar No. 7697)
W. Scott Evans (W. Va. Bar No. 5850)
Richard R. Marsh (W Va. Bar No. 10877)
Raymond L. Harrell, Jr. (W. Va. Bar No. 12995)
**FLAHERTY SENSABAUGH BONASSO PLLC**
200 Capitol Street
Post Office Box 3843
Charleston, West Virginia 25338-3843
304-345-0200 Telephone
304-345-0260 Facsimile
cbrumley@flahertylegal.com
wsevans@flahertylegal.com
rmarsh@flahertylegal.com
rharrell@flahertylegal.com
*Attorneys for Plaintiff*

# EXHIBIT A



McDonald Hopkins PLC
39533 Woodward Avenue
Suite 318
Bloomfield Hills, MI 48304

P  1.248.646.5070
F  1.248.646.5075

Direct Dial: 248.220.1355
E-mail: jboutrous@mcdonaldhopkins.com

May 16, 2018

VIA FEDEX OVERNIGHT
AND E-MAIL (rickrichards1975@gmail.com)

Rick Richards
2003 Whitetail Court
Morgantown WV 26508

Re:  Octane Environmental, LLC

Dear Mr. Richards:

The law firm of McDonald Hopkins LLC represents the interests of Octane Environmental, LLC ("Octane") regarding certain suspected illegal acts related to your recent departure from Octane. Octane is investigating this matter and will take any and all necessary legal action to protect Octane's rights and remedies.

Under West Virginia law, an employee owes a duty of good faith and loyalty to his employer's interests.  *See Recycling, LLC v. Hughart*, 2008 WL 5503782 (W.Va. Cir.Ct. Kanawha Cty, March 11, 2008), citing *Affiliated Construction Trades Foundation v. Vieweg*, 520 S.E.2d 854, 868 (W.Va. 1999).  An employee is considered to be in breach of his duty of loyalty if he competes with his employer.  *See id.*  A fiduciary duty is defined as "a duty to act for someone else's benefit, while subordinating one's personal interest to that of the other person." *Id.*, citing *Elmore v. State Farm Mutual Auto Insurance Company*, 504 S.E. 2d 893, 898 (W.Va. 1998).  In such cases, damages are typically the profits earned, in addition to forfeiture of compensation earned during the period of disloyalty.  It has come to our attention that you may have violated your fiduciary duties owed to Octane, as well as various other state and federal laws, by working for a competing company while employed by Octane.  Specifically, upon information and belief, you ran your new competing business while employed by Octane and you used and continue to use Octane's confidential information in your competing business.  Such actions constitute, among other things, a breach of your duty of loyalty, and potentially a violation of other state and federal laws.

We also believe that you may be improperly using Octane's confidential customer contacts in your new competing business.  A customer list is entitled to trade secret protection under state and federal law.  *See* W.Va. Code Ann. § 47-22-1; Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*  We believe you may have certain files and information that contain Octane's customer information, such as contact information, pricing, and customer preferences. We have engaged a forensic specialist to assist in our investigation.  Indeed, the compilation of this information is not known outside of Octane's business and it has taken years for Octane to compile this

Rick Richards
May 16, 2018
Page 2

information.  Octane's confidential customer information constitutes a protectable trade secret. We have reason to believe that you, your brothers, and your new competing business are currently misappropriating Octane's trade secret information by contacting and/or performing work for Octane's customers, which may violate W.Va. Code Ann. § 47-22-1 and the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*

We also suspect that you hired various family members, whom you have now engaged in your competing business, at inflated rates by fabricating the amounts that such family members earned at their previous places of employment.  This action has cost Octane thousands of dollars.  Based upon information and belief, you allowed your brother, Ernie Richards, to continue to collect wages from Octane while he was employed by a competitor.

Based upon the foregoing and our continued investigation, Octane may take legal action against you, including, but not limited to, seeking an injunction to prevent you from unfairly competing with Octane in violation of state and federal law, disgorgement of all wages paid to you, and remedies under W. Va. Code Ann. § 47-22-1 *et. seq.*, including punitive damages.

*In order to avoid litigation, you must at once cease and desist using Octane's protected trade secret information to contact Octane's customers.  You, your brothers, or your new competing business may not perform work for Octane's customers.  You must also immediately return any and all information and property of Octane in your possession.*

In addition, you are hereby on notice that you must preserve all potential evidence related to this matter. Specifically, you must not destroy, delete, modify or discard any documents, email messages, files or information, in electronic, paper or any other form or media, related to this matter.  Such documents include, but are not limited to, documents related to your former employment with Octane, the business and/or operations of Octane, Octane's customers and/or employees, as well as the specific matters set forth above.  In addition, you are instructed not to reformat your home computers or electronic devices, or change or delete any related information contained therein.  If you ignore this directive, Octane will seek any and all available sanctions against you.

Please respond to me in writing regarding the allegations in this letter no later than **Monday, May 21, 2018**.  Should you have any questions regarding the foregoing, please do not hesitate to contact me or have your attorney contact me.

Sincerely,

James J. Boutrous, II

McDonald Hopkins

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E.
Charleston, WV 25305

USPS CERTIFIED MAIL™



9214 8901 1251 3410 0002 3544 49

CRAIG STACY
1080 TOP OF THE HILL RD.
AKRON, OH 44333

**Mac Warner**
Secretary of State
State of West Virginia
**Phone:** 304-558-6000
886-767-8683
**Visit us online:**
www.wvsos.com

Control Number: 222697

Defendant: CRAIG STACY
1080 TOP OF THE HILL RD.
AKRON, OH 44333 US

County: Harrison

Civil Action: 18-C-144-2

Certified Number: 92148901125134100002354449

Service Date: 7/19/2018

I am enclosing:

**1 summons and complaint**

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on your behalf as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office.***

Sincerely,

*Mac Warner*

Mac Warner
Secretary of State

IN THE CIRCUIT COURT OF HARRISON COUNTY, WEST VIRGINIA

RICK RICHARDS,

       Plaintiff,

v.

OCTANE ENVIRONMENTAL, LLC, an
Ohio limited liability company, TERENCE
SEIKEL, CRAIG STACY, and
JOSEPH SEIKEL,

       Defendants.

Civil Action No.: 18-C-144-2
Judge Thomas A. Bedell

## SUMMONS

To the above-named Defendant:    **CRAIG STACY**

Service:    **SECRETARY OF STATE**

Notice of Process Address:    **1080 TOP OF THE HILL RD**
    **AKRON, OH, 44333**

    IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned and required to serve upon Plaintiff's attorney, Raymond L. Harrell, Jr., whose address is Flaherty Sensabaugh Bonasso PLLC, 200 Capitol Street, P.O. Box 3843, Charleston, West Virginia 25338-3843, an answer, including any related counterclaims you may have to the Complaint filed against you in the above styled civil action, a true copy of which is herewith delivered to you. You are required to serve your answer within thirty (30) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above styled civil action.

Dated:    7-18-18        _albert F. Marano_
                                Clerk of Harrison County Circuit Court

                            By:  _CL Sharpe_



FLAHERTY | SENSABAUGH | BONASSO PLLC

CHARLESTON
CLARKSBURG
MORGANTOWN
WHEELING

Richard R. Marsh, Esq.
rmarsh@flahertylegal.com
304-624-5687

July 17, 2018

Harrison County Circuit Clerk
Albert Marano
Harrison County Courthouse
301 West Main Street
Clarksburg, WV 26301-2967

     **Re:**    ***Rick Richards v. Octane Environmental, LLC, an Ohio Limited Liability
Company, Terrance Seikel, Craig Stacy, and Joseph Seikel*
Circuit Court of Harrison County, West Virginia
Civil Action No.: 18-C-144-2**

Dear Clerk Marano:

    Enclosed please find nine copies of the ***Complaint***, and a ***Civil Cover Sheet*** for service
in the above-styled civil action.  Enclosed is Check No.1059 made payable to the Secretary of
State in the amount of $80.00 for service.

    Your cooperation is greatly appreciated. Should you have any questions, please do not
hesitate to contact me. Thank you for your attention to this matter.

Sincerely,

Richard R. Marsh

RRM/cm3
Enclosures
11619.52129
C3256600.DOCX

FILED IN 15TH
CIRCUIT COURT
2018 JUL 17 P 4: 05

IN THE CIRCUIT COURT OF HARRISON COUNTY, WEST VIRGINIA

I.   STYLE OF CASE:

| PLAINTIFF: Rick Richards<br><br>DEFENDANTS: Octane Environmental, LLC, an Ohio Limited Liability Company, Terrance Seikel, Craig Stacy and Joseph Seikel | CASE NUMBER:<br><br>18-C-144-2 |
|---|---|

II.   TYPE OF CASE:

| TORTS | OTHER | CIVIL |
|---|---|---|
| o Asbestos | o Adoption | o Appeal from Magistrate Court |
| o Professional Malpractice | o Contract | o Petition for Modification of Magistrate Sentence |
| o Personal Injury | o Real Property | o Miscellaneous Civil |
| o Product Liability | o Mental Health | ☑ Other |
| o Other Tort | o Appeal of Administrative Agency | o |

III.   JURY DEMAND:      ☑ Yes  o No

CASE WILL BE READY FOR TRIAL BY (MONTH/YEAR) **Unknown at this time**

IV.   DO YOU OR ANY OF YOUR CLIENTS OR WITNESSES IN THIS CASE REQUIRE SPECIAL ACCOMMODATIONS DUE TO A DISABILITY OR AGE     o YES   ☑ NO

IF YES, PLEASE SPECIFY:
o Wheelchair accessible hearing room and other facilities
o Interpreter or other auxiliary aid for the hearing impaired
o Reader or other auxiliary aid for the visually impaired
o Spokesperson or other auxiliary aid for the speech impaired
o Other:_____

Attorney Name:   _Richard R. Marsh, WVSB #10877_
         _Christopher Brumley, WVSB# 7697_
         _W. Scott Evans, WVSB# 5850_
         _Raymond L. Harrell, Jr. WVSB# 12995_
Firm: _Flaherty Sensabaugh Bonasso PLLC_ ___

Address:_200 Capitol Street, P.O. Box 3843_
_Charleston, West Virginia 25338-3843_
Telephone: _(304) 345-0200_

Representing:
☑ Plaintiff – Rick Richards
o  Defendant
o  Cross-Complainant   o Third-Party Defendant

Dated: _May 24, 2018_

FILED IN 15TH
CIRCUIT COURT
2018 JUL 17 PD 4: 05

Richard R. Marsh, Counsel for Rick Richards

**Plaintiff:** Rick Richards _, et al_   **Case Number:** 18-C-144-2

**vs.**

**Defendant:** Octane Environmental, LLC, an Ohio Limited Liability Company _et al_

## CIVIL CASE INFORMATION STATEMENT
### DEFENDANT(S) CONTINUATION PAGE

Octane Environmental, LLC
Defendant's Name

45346 Courtview Trl
Street Address

Novi, MI 48375
City, State, Zip Code

Days to Answer: 30

Type of Service: Secretary of State

Terence Seikel
Defendant's Name

2766 Castlemartin Court
Street Address

Oakland Township, MI 48306
City, State, Zip Code

Days to Answer: 30

Type of Service: Secretary of State

Craig Stacy
Defendant's Name

1080 Top of the Hill Rd
Street Address

Akron, OH 44333
City, State, Zip Code

Days to Answer: 30

Type of Service: Secretary of State

Joseph Seikel
Defendant's Name

45346 Courtview Trl
Street Address

Novi, MI 48375
City, State, Zip Code

Days to Answer: 30

Type of Service: Secretary of State

Defendant's Name

Street Address

City, State, Zip Code

Days to Answer: _____

Type of Service: _____

Defendant's Name

Street Address

City, State, Zip Code

Days to Answer: _____

Type of Service: _____

Defendant's Name

Street Address

City, State, Zip Code

Days to Answer: _____

Type of Service: _____

**SCA-C-100:** Civil Case Information Statement-Defendant(s) Continuation Page          Revision Date: 12/2015

IN THE CIRCUIT COURT OF HARRISON COUNTY, WEST VIRGINIA

RICK RICHARDS,

      Plaintiff,

v.

OCTANE ENVIRONMENTAL, LLC, an
Ohio limited liability company, TERENCE
SEIKEL, CRAIG STACY, and
JOSEPH SEIKEL,

      Defendants.

Civil Action No.: _18- C -144-2_

Judge: _Bedell_

## COMPLAINT

COMES NOW Plaintiff, Rick Richards ("Plaintiff"), by counsel, Christopher A. Brumley, W. Scott Evans, Richard R. Marsh, Raymond L. Harrell, Jr., and the law firm of Flaherty Sensabaugh Bonasso PLLC, and hereby files this Complaint against Defendants, Octane Environmental, LLC, Terence Seikel, Joseph Seikel, and Craig Stacy (sometimes collectively, "Defendants"), and allege as follows:

### PARTIES

1.     Plaintiff s is, and was at all times relevant to this action, a West Virginia resident and citizen of Monongalia County, West Virginia. Plaintiff was employed by Defendant Octane in the position of General Manager until May 2018. Plaintiff was also promised, and is owed, an ownership interest in Defendant Octane as described herein.

2.     Defendant Octane Environmental, LLC ("Defendant Octane" or "Octane") is, and was at all times relevant to this action, an Ohio limited liability company with its principal office in Bridgeport, West Virginia.

3.     Upon information and belief, Defendant Terence Seikel ("Defendant Terence Seikel") is, and was at all times relevant to this action, a member and the majority shareholder of

1

Defendant Octane, and a resident and citizen of Oakland County, Michigan. Plaintiff reported to Defendant Terence Seikel during his time as General Manager of Defendant Octane.

     4.      Upon information and belief, Defendant Joseph Seikel ("Defendant Joseph Seikel") is, and was at all times relevant to this action, a member and employee of Defendant Octane and is a resident and citizen of Oakland County, Michigan.

     5.      Upon information and belief, Defendant Craig Stacy ("Defendant Stacy") is, and was at all times relevant to this action, a member and minority shareholder of Defendant Octane, and is a resident and citizen of Summit County, Ohio.  Plaintiff reported to Defendant Terence Seikel during his time as General Manager of Defendant Octane.

## JURISDICTION AND VENUE

     6.      Jurisdiction is appropriate pursuant to West Virginia Code Section 51-2-2 as the amount in controversy in this action exceeds two thousand five hundred Dollars ($2,500.00).

     7.      Pursuant to West Virginia Code Section 56-1-1(a), venue is proper in this Court because Defendant Octane is a limited liability company whose principal office is located in Harrison County, West Virginia. Further, the causes of action at issue arose, at least in part, in Harrison County, West Virginia.

## STATEMENT OF FACTS

     8.      From approximately October 2012 to July 2016, Plaintiff was employed by a company known as Extreme Plastics Plus, Inc. ("Extreme Plastics").  Through his employment with Extreme Plastics and his prior experience in the oil and gas services industry, Plaintiff developed a substantial book of customer business by providing environmental containment products and services.

9.      In or about June 2016, Plaintiff was introduced to Defendant Stacy, Defendant Terence Seikel, and others, who identified themselves as investors looking to form and develop a new business for the purpose of providing environmental containment products and services in the oil and gas industry (hereafter referred to collectively as the "Octane Owners"). The new business was Defendant Octane Environmental, LLC.

10.      Shortly thereafter, Defendants Stacy and Terence Seikel offered Plaintiff: 1) an initial 2.5% equity partner ownership in Octane with the potential to receive up to 5% equity partner ownership based on performance, to be paid out upon the sale of Octane; 2) at-will employment by Octane as its General Manager; 3) an annual salary; 4) participation in a profit-sharing program under which Plaintiff would receive a certain percentage of Octane's profits, to be paid on a monthly basis; and 5) other fringe benefits such as insurance and vacation time. In exchange for the foregoing promises, Plaintiff agreed to: 1) leave his employment with Extreme Plastics and begin serving as General Manager of Octane; 2) solicit or attempt to solicit his existing customers from Extreme Plastics to become customers of Octane and otherwise be responsible for developing Octane's oil and gas business; and 3) recruit other employees in the industry to become employed by Octane.

11.      In reliance upon the promises made by Defendants Stacy and Terence Seikel, Plaintiff began working with Defendants Stacy and Terence Seikel to form and develop Octane as its General Manager, and began receiving his promised salary at that time. Plaintiff was involved in several aspects of the formation and establishment of Octane.

12.      Plaintiff was an at will employee at all times during his employment relationship with Octane.

3

13.     Plaintiff also did not enter into any form of non-solicitation or non-compete agreement in connection with his employment by Defendant Octane. Plaintiff also refused Defendants' later request for him to enter into a non-solicitation or non-compete agreement. Plaintiff's continued employment with Octane was never conditioned on his execution of a non-solicitation or non-compete agreement.

14.     Due to the Octane Owners' lack of knowledge, skill, or experience in the oil and gas industry, the Octane Owners relied upon Plaintiff to develop almost all of Octane's business and customer base. During June 2016 and the proceeding months, Plaintiff successfully developed Octane's business and successfully solicited numerous of his former customers at Extreme Plastics to become customers of Defendant Octane, resulting in significant profits for Defendant Octane.

15.     Throughout his tenure as General Manager, Plaintiff brought several items of equipment personally owned by him to be used by Defendant Octane and its employees. This equipment included trailers, a saw, water pumps, welders, and several other items valued at approximately $30,000.00.

16.     In his capacity as General Manager, Plaintiff exercised the authority to hire and terminate Octane employees. Plaintiff was not required to obtain approval from the Octane Owners before hiring or terminating employees of Octane.

17.     Plaintiff successfully recruited several employees to become employed by Defendant Octane during his tenure as General Manager. One such recruit was Ernest Richards II.

18.     During October 2017, Ernest Richards II was hired by Defendant Octane in the position of General Manager/Ops Manager of Octane's Water Transfer Department. In this

4

capacity, Ernest Richards II was tasked with the establishment, formation, and execution of Defendant Octane's new Water Transfer Department.

19.    As General Manager of Octane, Plaintiff was in charge of hiring Ernest Richards II and served as his immediate supervisor.

20.    On April 27, 2018, Ernest Richards II submitted his two weeks' notice of voluntary termination of employment to Plaintiff, his supervisor. Ernest Richards II cited his inability to adequately perform his required job duties as a result of the Octane Owners' unwillingness to purchase the proper equipment and parts needed to do so as the reason for his resignation.

21.    Plaintiff did not notify the Octane Owners of Ernest Richards II's submission of his two weeks' notice because 1) he was not required to do so, and 2) he hoped he would be able to convince Ernest Richards II to stay at Octane.

22.    From July 22, 2016 until May 7, 2018, Plaintiff successfully and satisfactorily performed his duties as General Manager of Defendant Octane. As a direct and proximate result of Plaintiff's performance, Defendant Octane generated significant revenue and profits during this time.

23.    From July 22, 2016 until May 7, 2018, Plaintiff never received any verbal or written discipline or reprimand, for any reason, by his immediate supervisors at Octane.

24.    Despite Plaintiff's flawless management and performance record and his lack of any discipline, Plaintiff was notified by Defendant Terence Seikel on May 7, 2018 that he would be demoted from General Manager to the position of Business Development. He was also notified that Johnny Goff ("Mr. Goff") had been hired to essentially replace Plaintiff and assume

the role of Chief Operating Officer. No reason or explanation for Plaintiff's sudden and unexpected demotion was provided to him during this conversation.

25.     On May 9, 2018, Mr. Goff was present at the premises of Octane, and Plaintiff was tasked with introducing Mr. Goff to employees. On the same date, Mr. Goff immediately assumed the position of Chief Operating Officer of Octane. In this capacity, Mr. Goff became Plaintiff's immediate supervisor.

26.     Two days later, on the morning of May 11, 2018, Plaintiff was asked to step outside of the main office at Octane by its Human Resources representative, Alyssa Larry. During the conversation, Octane employees Amanda Hunt and Aaron Giles were led out of the building by Mr. Goff, and Plaintiff was invited in.

27.     Once back inside the building, Mr. Goff shut and locked the door, and informed Plaintiff that he was suspended from his employment with Octane, effective immediately, for "illegal activity."

28.     Plaintiff asked exactly what illegal activity he was being suspended for since he had committed no such activity, and was told by Mr. Goff only that Plaintiff's suspected illegal activity was under investigation.

29.     During this conversation, Plaintiff was informed that his computer and company vehicle had been confiscated by management, that his suspension would last for one week, and that Plaintiff was not permitted on the Octane premises during the suspension period.

30.     After this conversation occurred, Plaintiff was required to request a ride home from his brother Jason Richards, also an Octane employee, since Mr. Goff and the Octane management had confiscated his company vehicle. Despite not displaying any angered, violent, or otherwise indignant behavior after his conversation with Mr. Goff, Plaintiff was instructed and

made to leave the Octane premises in the plain view of his fellow employees and former subordinates.

31.    On May 12, 2018, Plaintiff submitted his resignation of employment with Octane to Defendant Terence Seikel.

32.    Following his resignation, Plaintiff was informed by several individuals that Defendants have made, and continue to make, false and defamatory statements about Plaintiff to certain Octane employees and customers. Upon information and belief, these statements include but are not necessarily limited to the following: that Plaintiff engaged in illegal activity; that Plaintiff stole money from Octane during his employment and used said money to start a new company; that Plaintiff allowed his brother(s) to work there while simultaneously working for a competitor; and that Plaintiff was working for a competing company while at Octane.

33.    By virtue of his resignation of employment with Octane, Plaintiff made a request to Defendants for the return of his personal property described herein, which remains in the possession and use of Octane. This request has been ignored by Octane, and Plaintiff continues to suffer from the loss of use of his personal property. Octane has neither compensated nor offered to compensate Plaintiff for the use or retention of Plaintiff's personal property.

34.    At no point during his employment with Octane from July 22, 2016 to May 12, 2018 did Plaintiff receive any of his promised ownership interest in Octane. Further, Plaintiff never received any of the promised profit-sharing of Octane during that time.

35.    At no point during his employment with Octane from July 22, 2016 to May 12, 2018 did Plaintiff: 1) turn any customers away from Octane; 2) independently perform work for any customer for his own personal benefit or to the detriment of Octane; 3) use Octane's property or business for any personal advantage or to derive any personal benefit other than his

7

promised salary as an Octane employee; 4) derive any secret profits by virtue of the employment relationship with Octane; or 5) work for any competitor of Octane or any other company.

36.     Plaintiff never entered into any non-solicitation or non-compete agreement with Defendant Octane or the Octane Owners.

37.     Despite the foregoing, Plaintiff received correspondence from counsel for Defendant Octane, attached as **Exhibit A**, erroneously and libelously accusing Plaintiff of violating various laws by the committing the following acts:

    a. Violating fiduciary duties owed to Octane;

    b. Working for competing companies both while employed by Octane and after the termination of the employment relationships with Octane

    c. Using Octane's confidential information in a competing business both while employed by Octane and after the termination of the employment relationship;

    d. Misappropriating Octane's trade secrets; and

    e. Allowing family members to be hired at "inflated rates" and permitting the same to work for a competitor.

38.     As shown, the correspondence from counsel for Defendant Octane contains a demand for Plaintiff to "cease and desist" certain activities, and also threatens formal legal action.

### LEGAL CLAIMS

### COUNT I: DECLARATORY JUDGMENT AGAINST DEFENDANTS

39.     Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

40.     Pursuant to the West Virginia Declaratory Judgment Act, West Virginia Code §55-13-1 and Rule 57 of the West Virginia Rules of Civil Procedure, "'the courts of record of the State of West Virginia shall have the power to declare rights, status and other legal relations whether or not further relief is or could be claimed."

41.     As stated above, Plaintiff was at-will employees of Octane, and Plaintiff never entered into any non-solicitation or non-compete agreement with Defendant Octane or the Octane Owners.

42.     Defendant Octane's false allegations that Plaintiff have and are currently "using Octane's protected trade secret information" and that Plaintiff are "unfairly competing with Octane in violation of state and federal law" may impair or unreasonably restrict Plaintiff's ability to engage in employment throughout the United States and may constitute tortious interference with Plaintiff's business relationships with future, prospective, or current employers.

43.     As such, Plaintiff demands the following:

   a.   A declaratory judgment that there are no enforceable restrictive covenants affecting or restricting Plaintiff's ability to engage in employment in the future in any trade or profession and in any geographical area;

   b.   A declaratory judgment that any fiduciary duty allegedly owed by Plaintiff to Defendants was immediately extinguished upon termination of Plaintiff's employment with Octane, and that Plaintiff does not owe any fiduciary duty to Octane or any other Defendants;

   c.   A declaratory judgment that Plaintiff is not prohibited from engaging in any business which competes or may compete with Octane since Plaintiff is not and

has never been bound by any non-solicitation agreement or non-compete agreement with Octane or Defendants;

d.   A declaratory judgment that Plaintiff has not engaged in any of the other wrongdoing or illegal activities alleged by counsel for Octane;

e.   An immediate expedited hearing; and,

f.   That Plaintiff have such other and further equitable relief or decree as may be granted or necessary.

### COUNT II: BREACH OF CONTRACT

44.   Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

45.   Plaintiff formed a valid oral contract with Defendant Octane and the Octane Owners, as described in Paragraphs 11-13 above.

46.   Plaintiff performed all or substantially all of the obligations imposed under the oral contract with Defendants.

47.   Defendants materially breached the oral contract by failing to 1) conferring the promised equity partner ownership interest in Octane to Plaintiff; and 2) failing to provide any of the promised sharing of Octane's profits with Plaintiff.

48.   As a result of Defendants' breach, Plaintiff has suffered and continues to suffer monetary damages.

49.   Defendants' material breach of the oral agreement was and continues to be the actual and proximate cause of the damages suffered by Plaintiff.

10

## COUNT III: DEFAMATION

50.     Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

51.     Defendants have intentionally, willfully, and negligently published false, defamatory, and non-privileged communications to third persons specifically referencing the Plaintiff and which statements have been injurious to his personal and professional reputation.

52.     Upon information and belief, the false statements made by Defendants have included, among others, accusations that: 1) Plaintiff engaged in illegal activity while employed by Octane; and 2) that Plaintiff stole money from Octane during his employment.

53.     As a direct and proximate result of such wrongful and unlawful conduct, Plaintiff has sustained damages to his personal and professional reputation, a loss of dignity, humiliation, embarrassment as well as such other damages as are more fully described herein.

## COUNT IV: CONVERSION

54.     Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

55.     Defendants currently exercise dominion and control over the personal property of Plaintiff described herein in contravention of Plaintiff's rights.

56.     Plaintiff has attempted to reclaim the personal property, but Defendants refuse to allow Plaintiff access to the Octane property to retrieve the personal property, and further refuse to return the personal property to Plaintiff.

57.     Plaintiff has suffered, and continues to suffer, damages in the form of money damages, and lost use of his personal property described herein.

## COUNT V: VIOLATION OF THE WEST VIRGINIA WAGE PAYMENT AND COLLECTION ACT

58.    Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

59.    The West Virginia Wage Payment and Collection Act ("WVWPCA"), states that the term "wages," as used in the WVWPCA, includes "accrued fringe benefits capable of calculation and payable directly to an employee[.]" W. Va. Code § 21-5-1(c).

60.    The WVWPCA defines "fringe benefits" as "any benefit provided an employee or group of employees by an employer, or which is required by law, and includes **regular vacation, graduated vacation, floating vacation** . . . " W. Va. Code § 21-5-1(l) (emphasis added).

61.    Pursuant to the requirements of the WVWPCA, "whenever an employee quits or resigns from employment, the person, firm or corporation shall pay the employee's **wages due** for work that the employee performed prior to the separation of employment **on or before the next regular payday** on which the wages would otherwise be due and payable." W. Va. Code § 21-5-4(b) (emphasis added).

62.    At the time of Plaintiff's separation of employment from Defendant Octane, Plaintiff had accrued, and Defendant Octane owed to him, nine weeks of earned vacation time.

63.    Because Plaintiff was a salaried employee of Octane, his nine weeks of accrued vacation time are "fringe benefits capable of calculation" and thus are considered "wages due" under the WVWPCA.

64.    Additionally, Plaintiff was never paid for working on the dates of July 22, 2016 and July 23, 2016, despite his salaried position.

12

65.    To date, Defendants have failed and/or refused to pay Plaintiff's accrued vacation time and past due wages in violation of the WVWPCA.

66.    Plaintiff has suffered, and continues to suffer, damages in the form of money damages as a result of Defendants' withholding and refusal to pay Plaintiff his accrued vacation time and wages due.

67.    Further, because Octane failed to timely pay Plaintiff in accordance with the requirements set forth in the WVWPCA as described above, Plaintiff is entitled to recover the amount owed to Plaintiff and "two times that unpaid amount as liquidated damages." W. Va. Code § 21-5-4(e).

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.    The declaratory judgments requested herein;

B.    Compensatory damages for Defendants' breaches of contract to Plaintiff;

C.    Pre-judgment interest and post-judgment interest on Plaintiff's breach of contract claims;

D.    Compensatory damages for Plaintiff's accrued vacation time and other wages due pursuant to the WVWPCA;

E.    Liquidated damages in an amount equal to two times the unpaid amount owed to Plaintiff by Defendants pursuant to the WVWPCA;

F.    An injunction ordering the immediate return of Plaintiff's personal property by Defendants or, in the alternative, compensatory damages in an amount equal to the fair market value of Plaintiff's personal property;

13

G.   Compensatory damages for the damage caused to Plaintiff's personal and professional reputation as well as his loss of dignity, humiliation, and embarrassment caused by Defendants' defamatory statements;

H.   Reasonable attorneys' fees, forum fees and costs incurred in prosecuting this action; and

I.   Such other and further relief as this Court deems just, proper, and equitable.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES.**

Respectfully Submitted,

**RICK RICHARDS**

By Counsel,

Christopher Brumley, Esq. (W. Va. Bar No. 7697)
W. Scott Evans (W. Va. Bar No. 5850)
Richard R. Marsh (W Va. Bar No. 10877)
Raymond L. Harrell, Jr. (W. Va. Bar No. 12995)
**FLAHERTY SENSABAUGH BONASSO** PLLC
200 Capitol Street
Post Office Box 3843
Charleston, West Virginia 25338-3843
304-345-0200 Telephone
304-345-0260 Facsimile
cbrumley@flahertylegal.com
wsevans@flahertylegal.com
rmarsh@flahertylegal.com
rharrell@flahertylegal.com
*Attorneys for Plaintiff*

14

# EXHIBIT A



A business advisory and advocacy law firm®

McDonald Hopkins PLC
39533 Woodward Avenue
Suite 318
Bloomfield Hills, MI 48304

P 1.248.646.5070
F 1.248.646.5075

Direct Dial: 248.220.1355
E-mail: jboutrous@mcdonaldhopkins.com

May 16, 2018

**VIA FEDEX OVERNIGHT
AND E-MAIL (rickrichards1975@gmail.com)**

Rick Richards
2003 Whitetail Court
Morgantown WV 26508

      Re:  Octane Environmental, LLC

Dear Mr. Richards:

The law firm of McDonald Hopkins LLC represents the interests of Octane Environmental, LLC ("Octane") regarding certain suspected illegal acts related to your recent departure from Octane. Octane is investigating this matter and will take any and all necessary legal action to protect Octane's rights and remedies.

Under West Virginia law, an employee owes a duty of good faith and loyalty to his employer's interests. *See Recycling, LLC v. Hughart*, 2008 WL 5503782 (W.Va. Cir.Ct. Kanawha Cty, March 11, 2008), citing *Affiliated Construction Trades Foundation v. Vieweg*, 520 S.E.2d 854, 868 (W.Va. 1999). An employee is considered to be in breach of his duty of loyalty if he competes with his employer. *See id.* A fiduciary duty is defined as "a duty to act for someone else's benefit, while subordinating one's personal interest to that of the other person." *Id.*, citing *Elmore v. State Farm Mutual Auto Insurance Company*, 504 S.E. 2d 893, 898 (W.Va. 1998). In such cases, damages are typically the profits earned, in addition to forfeiture of compensation earned during the period of disloyalty. It has come to our attention that you may have violated your fiduciary duties owed to Octane, as well as various other state and federal laws, by working for a competing company while employed by Octane. Specifically, upon information and belief, you ran your new competing business while employed by Octane and you used and continue to use Octane's confidential information in your competing business. Such actions constitute, among other things, a breach of your duty of loyalty, and potentially a violation of other state and federal laws.

We also believe that you may be improperly using Octane's confidential customer contacts in your new competing business. A customer list is entitled to trade secret protection under state and federal law. *See* W.Va. Code Ann. § 47-22-1; Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* We believe you may have certain files and information that contain Octane's customer information, such as contact information, pricing, and customer preferences. We have engaged a forensic specialist to assist in our investigation. Indeed, the compilation of this information is not known outside of Octane's business and it has taken years for Octane to compile this

Rick Richards
May 16, 2018
Page 2

information.  Octane's confidential customer information constitutes a protectable trade secret. We have reason to believe that you, your brothers, and your new competing business are currently misappropriating Octane's trade secret information by contacting and/or performing work for Octane's customers, which may violate W.Va. Code Ann. § 47-22-1 and the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*

We also suspect that you hired various family members, whom you have now engaged in your competing business, at inflated rates by fabricating the amounts that such family members earned at their previous places of employment.  This action has cost Octane thousands of dollars.  Based upon information and belief, you allowed your brother, Ernie Richards, to continue to collect wages from Octane while he was employed by a competitor.

Based upon the foregoing and our continued investigation, Octane may take legal action against you, including, but not limited to, seeking an injunction to prevent you from unfairly competing with Octane in violation of state and federal law, disgorgement of all wages paid to you, and remedies under W. Va. Code Ann. § 47-22-1 *et. seq.*, including punitive damages.

*In order to avoid litigation, you must at once cease and desist using Octane's protected trade secret information to contact Octane's customers.  You, your brothers, or your new competing business may not perform work for Octane's customers.  You must also immediately return any and all information and property of Octane in your possession.*

In addition, you are hereby on notice that you must preserve all potential evidence related to this matter.  Specifically, you must not destroy, delete, modify or discard any documents, email messages, files or information, in electronic, paper or any other form or media, related to this matter.  Such documents include, but are not limited to, documents related to your former employment with Octane, the business and/or operations of Octane, Octane's customers and/or employees, as well as the specific matters set forth above.  In addition, you are instructed not to reformat your home computers or electronic devices, or change or delete any related information contained therein.  If you ignore this directive, Octane will seek any and all available sanctions against you.

Please respond to me in writing regarding the allegations in this letter no later than **Monday, May 21, 2018.**  Should you have any questions regarding the foregoing, please do not hesitate to contact me or have your attorney contact me.

Sincerely,

James J. Boutrous, II

{7401102:3 }

McDonald Hopkins
Attorneys at Law