**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

RICK RICHARDS, and
ERNEST RICHARDS, II,

    Plaintiffs/Counter-Defendants,

v.

OCTANE ENVIRONMENTAL, LLC, an
Ohio limited liability company,
TERENCE SEIKEL,
CRAIG STACY, and
JOSEPH SEIKEL,

    Defendants/ Counter Claimants/
    Third-Party Plaintiff/Counter Defendant,

v.

JASON RICHARDS,
AMANDA HUNT,
AARON GILES, and
JACOB RICHARDS,

    Third-Party Defendants, Counter Claimants
    against Octane Environmental, LLC.

Civil Action No. 1:18-CV-158
c/w   1:18-CV-157
(Judge Kleeh)

## AMENDED COMPLAINT

COMES NOW Plaintiff, Rick Richards ("Plaintiff"), by counsel, Christopher A. Brumley, W. Scott Evans, Michael A. Secret, and the law firm of Flaherty Sensabaugh Bonasso PLLC, and hereby files this Complaint against Defendants, Octane Environmental, LLC, Terence Seikel, Joseph Seikel, and Craig Stacy (sometimes collectively, "Defendants"), and allege as follows:

### PARTIES

1.    Plaintiff s is, and was at all times relevant to this action, a West Virginia resident and citizen of Monongalia County, West Virginia. Plaintiff was employed by Defendant Octane



in the position of General Manager until May 2018. Plaintiff was also promised, and is owed, an ownership interest in Defendant Octane as described herein.

2. Defendant Octane Environmental, LLC ("Defendant Octane" or "Octane") is, and was at all times relevant to this action, an Ohio limited liability company with its principal office in Bridgeport, West Virginia.

3. Upon information and belief, Defendant Terence Seikel ("Defendant Terence Seikel") is, and was at all times relevant to this action, a member and the majority shareholder of Defendant Octane, and a resident and citizen of Oakland County, Michigan. Plaintiff reported to Defendant Terence Seikel during his time as General Manager of Defendant Octane.

4. Upon information and belief, Defendant Joseph Seikel ("Defendant Joseph Seikel") is, and was at all times relevant to this action, a member and employee of Defendant Octane and is a resident and citizen of Oakland County, Michigan.

5. Upon information and belief, Defendant Craig Stacy ("Defendant Stacy") is, and was at all times relevant to this action, a member and minority shareholder of Defendant Octane, and is a resident and citizen of Summit County, Ohio. Plaintiff reported to Defendant Terence Seikel during his time as General Manager of Defendant Octane.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction over this suit pursuant to 28 U.S.C. § 1332 because it is between citizens or entities of different States and the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

7. This Court has personal jurisdiction over the Defendant Octane and the Octane Owners pursuant to West Virginia Code § 56-3-33 and consistent with the due process requirements of the Fourteenth Amendment because the underlying dispute with respect to which

this action arises from business transacted by the Defendant Octane and the Octane Owners in the State of West Virginia relating to Plaintiff's employment.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions given rise to the dispute with respect to which relief is sought occurred in the Northern District of West Virginia.

## STATEMENT OF FACTS

9. From approximately October 2012 to July 2016, Plaintiff was employed by a company known as Extreme Plastics Plus, Inc. ("Extreme Plastics"). Through his employment with Extreme Plastics and his prior experience in the oil and gas services industry, Plaintiff developed a substantial book of customer business by providing environmental containment products and services.

10. In or about June 2016, Plaintiff was introduced to Defendant Stacy, Defendant Terence Seikel, and others, who identified themselves as investors looking to form and develop a new business for the purpose of providing environmental containment products and services in the oil and gas industry (hereafter referred to collectively as the "Octane Owners"). The new business was Defendant Octane Environmental, LLC.

11. Shortly thereafter, Defendants Stacy and Terence Seikel offered Plaintiff: 1) an initial 2.5% equity partner ownership in Octane with the potential to receive up to 5% equity partner ownership based on performance, to be paid out upon the sale of Octane; 2) at-will employment by Octane as its General Manager; 3) an annual salary; 4) participation in a profit-sharing program under which Plaintiff would receive a certain percentage of Octane's profits, to be paid on a monthly basis; and 5) other fringe benefits such as insurance and vacation time. In exchange for the foregoing promises, Plaintiff agreed to: 1) leave his employment with Extreme

Plastics and begin serving as General Manager of Octane; 2) solicit or attempt to solicit his existing customers from Extreme Plastics to become customers of Octane and otherwise be responsible for developing Octane's oil and gas business; and 3) recruit other employees in the industry to become employed by Octane.

12. In reliance upon the promises made by Defendants Stacy and Terence Seikel, Plaintiff began working with Defendants Stacy and Terence Seikel to form and develop Octane as its General Manager, and began receiving his promised salary at that time. Plaintiff was involved in several aspects of the formation and establishment of Octane.

13. Plaintiff was an at will employee at all times during his employment relationship with Octane.

14. Plaintiff also did not enter into any form of non-solicitation or non-compete agreement in connection with his employment by Defendant Octane. Plaintiff also refused Defendants' later request for him to enter into a non-solicitation or non-compete agreement. Plaintiff's continued employment with Octane was never conditioned on his execution of a non-solicitation or non-compete agreement.

15. Due to the Octane Owners' lack of knowledge, skill, or experience in the oil and gas industry, the Octane Owners relied upon Plaintiff to develop almost all of Octane's business and customer base. During June 2016 and the proceeding months, Plaintiff successfully developed Octane's business and successfully solicited numerous of his former customers at Extreme Plastics to become customers of Defendant Octane, resulting in significant profits for Defendant Octane.

16. Throughout his tenure as General Manager, Plaintiff brought several items of equipment personally owned by him to be used by Defendant Octane and its employees. This

equipment included trailers, a saw, water pumps, welders, and several other items valued at approximately $30,000.00.

17. In his capacity as General Manager, Plaintiff exercised the authority to hire and terminate Octane employees. Plaintiff was not required to obtain approval from the Octane Owners before hiring or terminating employees of Octane.

18. Plaintiff successfully recruited several employees to become employed by Defendant Octane during his tenure as General Manager. One such recruit was Ernest Richards II.

19. During October 2017, Ernest Richards II was hired by Defendant Octane in the position of General Manager/Ops Manager of Octane's Water Transfer Department. In this capacity, Ernest Richards II was tasked with the establishment, formation, and execution of Defendant Octane's new Water Transfer Department.

20. As General Manager of Octane, Plaintiff was in charge of hiring Ernest Richards II and served as his immediate supervisor.

21. On April 27, 2018, Ernest Richards II submitted his two weeks' notice of voluntary termination of employment to Plaintiff, his supervisor. Ernest Richards II cited his inability to adequately perform his required job duties as a result of the Octane Owners' unwillingness to purchase the proper equipment and parts needed to do so as the reason for his resignation.

22. Plaintiff did not notify the Octane Owners of Ernest Richards II's submission of his two weeks' notice because 1) he was not required to do so, and 2) he hoped he would be able to convince Ernest Richards II to stay at Octane.

23. From July 22, 2016 until May 7, 2018, Plaintiff successfully and satisfactorily performed his duties as General Manager of Defendant Octane. As a direct and proximate result

of Plaintiff's performance, Defendant Octane generated significant revenue and profits during this time.

24. From July 22, 2016 until May 7, 2018, Plaintiff never received any verbal or written discipline or reprimand, for any reason, by his immediate supervisors at Octane.

25. Despite Plaintiff's flawless management and performance record and his lack of any discipline, Plaintiff was notified by Defendant Terence Seikel on May 7, 2018 that he would be demoted from General Manager to the position of Business Development. He was also notified that Johnny Goff ("Mr. Goff") had been hired to essentially replace Plaintiff and assume the role of Chief Operating Officer. No reason or explanation for Plaintiff's sudden and unexpected demotion was provided to him during this conversation.

26. On May 9, 2018, Mr. Goff was present at the premises of Octane, and Plaintiff was tasked with introducing Mr. Goff to employees. On the same date, Mr. Goff immediately assumed the position of Chief Operating Officer of Octane. In this capacity, Mr. Goff became Plaintiff's immediate supervisor.

27. Two days later, on the morning of May 11, 2018, Plaintiff was asked to step outside of the main office at Octane by its Human Resources representative, Alyssa Larry. During the conversation, Octane employees Amanda Hunt and Aaron Giles were led out of the building by Mr. Goff, and Plaintiff was invited in.

28. Once back inside the building, Mr. Goff shut and locked the door, and informed Plaintiff that he was suspended from his employment with Octane, effective immediately, for "illegal activity."

29. Plaintiff asked exactly what illegal activity he was being suspended for since he had committed no such activity, and was told by Mr. Goff only that Plaintiff's suspected illegal activity was under investigation.

30. During this conversation, Plaintiff was informed that his computer and company vehicle had been confiscated by management, that his suspension would last for one week, and that Plaintiff was not permitted on the Octane premises during the suspension period.

31. After this conversation occurred, Plaintiff was required to request a ride home from his brother Jason Richards, also an Octane employee, since Mr. Goff and the Octane management had confiscated his company vehicle. Despite not displaying any angered, violent, or otherwise indignant behavior after his conversation with Mr. Goff, Plaintiff was instructed and made to leave the Octane premises in the plain view of his fellow employees and former subordinates.

32. On May 12, 2018, Plaintiff submitted his resignation of employment with Octane to Defendant Terence Seikel.

33. Following his resignation, Plaintiff was informed by several individuals that Defendants have made, and continue to make, false and defamatory statements about Plaintiff to certain Octane employees and customers. Upon information and belief, these statements include but are not necessarily limited to the following: that Plaintiff engaged in illegal activity; that Plaintiff stole money from Octane during his employment and used said money to start a new company; that Plaintiff allowed his brother(s) to work there while simultaneously working for a competitor; and that Plaintiff was working for a competing company while at Octane.

34. By virtue of his resignation of employment with Octane, Plaintiff made a request to Defendants for the return of his personal property described herein, which remains in the possession and use of Octane. This request has been ignored by Octane, and Plaintiff continues to

suffer from the loss of use of his personal property. Octane has neither compensated nor offered to compensate Plaintiff for the use or retention of Plaintiff's personal property.

35. At no point during his employment with Octane from July 22, 2016 to May 12, 2018 did Plaintiff receive any of his promised ownership interest in Octane. Further, Plaintiff never received any of the promised profit-sharing of Octane during that time.

36. At no point during his employment with Octane from July 22, 2016 to May 12, 2018 did Plaintiff: 1) turn any customers away from Octane; 2) independently perform work for any customer for his own personal benefit or to the detriment of Octane; 3) use Octane's property or business for any personal advantage or to derive any personal benefit other than his promised salary as an Octane employee; 4) derive any secret profits by virtue of the employment relationship with Octane; or 5) work for any competitor of Octane or any other company.

37. Plaintiff never entered into any non-solicitation or non-compete agreement with Defendant Octane or the Octane Owners.

38. Despite the foregoing, Plaintiff received correspondence from counsel for Defendant Octane, attached as **Exhibit A**, erroneously and libelously accusing Plaintiff of violating various laws by the committing the following acts:

    a. Violating fiduciary duties owed to Octane;

    b. Working for competing companies both while employed by Octane and after the termination of the employment relationships with Octane

    c. Using Octane's confidential information in a competing business both while employed by Octane and after the termination of the employment relationship;

    d. Misappropriating Octane's trade secrets; and

  e. Allowing family members to be hired at "inflated rates" and permitting the same to work for a competitor.

39. As shown, the correspondence from counsel for Defendant Octane contains a demand for Plaintiff to "cease and desist" certain activities, and also threatens formal legal action.

## LEGAL CLAIMS

### COUNT I: DECLARATORY JUDGMENT AGAINST DEFENDANTS

40. Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

41. Pursuant to the West Virginia Declaratory Judgment Act, West Virginia Code §55-13-1 and Rule 57 of the West Virginia Rules of Civil Procedure, "the courts of record of the State of West Virginia shall have the power to declare rights, status and other legal relations whether or not further relief is or could be claimed."

42. As stated above, Plaintiff was at-will employees of Octane, and Plaintiff never entered into any non-solicitation or non-compete agreement with Defendant Octane or the Octane Owners.

43. Defendant Octane's false allegations that Plaintiff have and are currently "using Octane's protected trade secret information" and that Plaintiff are "unfairly competing with Octane in violation of state and federal law" may impair or unreasonably restrict Plaintiff's ability to engage in employment throughout the United States and may constitute tortious interference with Plaintiff's business relationships with future, prospective, or current employers.

44. As such, Plaintiff demands the following:

a. A declaratory judgment that there are no enforceable restrictive covenants affecting or restricting Plaintiff's ability to engage in employment in the future in any trade or profession and in any geographical area;

b. A declaratory judgment that any fiduciary duty allegedly owed by Plaintiff to Defendants was immediately extinguished upon termination of Plaintiff's employment with Octane, and that Plaintiff does not owe any fiduciary duty to Octane or any other Defendants;

c. A declaratory judgment that Plaintiff is not prohibited from engaging in any business which competes or may compete with Octane since Plaintiff is not and has never been bound by any non-solicitation agreement or non-compete agreement with Octane or Defendants;

d. A declaratory judgment that Plaintiff has not engaged in any of the other wrongdoing or illegal activities alleged by counsel for Octane;

e. An immediate expedited hearing; and,

f. That Plaintiff have such other and further equitable relief or decree as may be granted or necessary.

## COUNT II: BREACH OF CONTRACT

45. Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

46. Plaintiff formed a valid oral contract with Defendant Octane and the Octane Owners, as described in Paragraphs 11-13 above.

47. Plaintiff performed all or substantially all of the obligations imposed under the oral contract with Defendants.

48. Defendants materially breached the oral contract by failing to 1) conferring the promised equity partner ownership interest in Octane to Plaintiff; and 2) failing to provide any of the promised sharing of Octane's profits with Plaintiff.

49. As a result of Defendants' breach, Plaintiff has suffered and continues to suffer monetary damages.

50. Defendants' material breach of the oral agreement was and continues to be the actual and proximate cause of the damages suffered by Plaintiff.

### COUNT III: UNJUST ENRICHMENT

51. Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

52. Plaintiff was induced to resign from his prior employment and join Octane by Defendant Octane and the Octane Owners, as described in Paragraphs 11-13 above.

53. Plaintiff assisted tremendously with the formation of Octane and brought a wealth of knowledge with him to Octane's business, which assisted Octane greatly in its early phases as a company.

54. Plaintiff performed all substantially all of the obligations required of him as a manager of Octane and with a reasonable expectation of the promised ownership interest and profit sharing

55. Plaintiff provided a benefit to Octane and Octane Owners by bringing his knowledge of the energy industry, significant customer contacts, as well as providing his own equipment and property to Octane for use on occasion

56. Defendant Octane and the Octane Owners unjustly retain the benefits that Plaintiff provided to Octane as described in the previous paragraph.

57. Defendant Octane and the Octane Owners, against the fundamental principles of justice or equity and good conscience, have retained these benefits to the loss of Plaintiff, who resigned from his previous employment and joined Octane at the behest of the Defendant Octane and the Octane Owners.

58. As a direct and proximate cause of Defendant Octane and the Octane Owners' unjust retention of these benefits, Plaintiff suffered from and continues to suffer from monetary damages.

### COUNT IV: PROMISSORY ESTOPPEL

59. Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

60. Defendant Octane and the Octane Owners promised Plaintiff that if Plaintiff would resign from his prior employment and work for Octane, that Plaintiff would be able to avail himself of Octane's ownership interest and profit-sharing.

61. Defendant Octane and the Octane Owners should have or did reasonably expect that this promise would induce Plaintiff to resign from his prior employment and begin working for Octane to avail himself of Octane's ownership interest and profit-sharing.

62. Plaintiff did resign from his prior employment and began working for Octane to avail himself of Octane's ownership interest and profit-sharing.

63. Plaintiff assisted tremendously in the formation and operation of Octane and brought a wealth of knowledge with him to Octane's business and substantial customer contacts, which assisted and benefited Octane and Octane Owners greatly in its early phases as a company with the reasonable expectation to receive an ownership interest and participate in profit sharing.

64. After making these above promises to Plaintiff, Defendant Octane and the Octane Owners failed to fulfill their end of the promise by allowing Plaintiff to take part in the Octane ownership interest and profit-sharing as originally promised by them.

65. As a result of these promises that were not fulfilled by Defendant Octane and the Octane Owners, the Plaintiff has suffered from and continues to suffer from monetary damages as he had never been able to avail himself of the Octane's ownership interest and profit-sharing.

66. Injustice can only be avoided in this matter if Plaintiff is able to be compensated for his loss of participation in Octane's ownership interest and profit-sharing as originally promised to him.

## COUNT V: DEFAMATION

67. Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

68. Defendants have intentionally, willfully, and negligently published false, defamatory, and non-privileged communications to third persons specifically referencing the Plaintiff and which statements have been injurious to his personal and professional reputation.

69. Upon information and belief, the false statements made by Defendants have included, among others, accusations that: 1) Plaintiff engaged in illegal activity while employed by Octane; and 2) that Plaintiff stole money from Octane during his employment.

70. As a direct and proximate result of such wrongful and unlawful conduct, Plaintiff has sustained damages to his personal and professional reputation, a loss of dignity, humiliation, embarrassment as well as such other damages as are more fully described herein.

### COUNT VI: CONVERSION

71. Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

72. Defendants currently exercise dominion and control over the personal property of Plaintiff described herein in contravention of Plaintiff's rights.

73. Plaintiff has attempted to reclaim the personal property, but Defendants refuse to allow Plaintiff access to the Octane property to retrieve the personal property, and further refuse to return the personal property to Plaintiff.

74. Plaintiff has suffered, and continues to suffer, damages in the form of money damages, and lost use of his personal property described herein.

### COUNT VII: VIOLATION OF THE WEST VIRGINIA WAGE PAYMENT AND COLLECTION ACT

75. Plaintiff hereby incorporates and reasserts all of the previous allegations of this Complaint.

76. The West Virginia Wage Payment and Collection Act ("WVWPCA"), states that the term "wages," as used in the WVWPCA, includes "accrued fringe benefits capable of calculation and payable directly to an employee[.]" W. Va. Code § 21-5-1(c).

77. The WVWPCA defines "fringe benefits" as "any benefit provided an employee or group of employees by an employer, or which is required by law, and **includes regular vacation, graduated vacation, floating vacation** . . . " W. Va. Code § 21-5-1(l) (emphasis added).

78. Pursuant to the requirements of the WVWPCA, "whenever an employee quits or resigns from employment, the person, firm or corporation shall pay the employee's **wages due** for work that the employee performed prior to the separation of employment **on or before the next**

**regular payday** on which the wages would otherwise be due and payable." W. Va. Code § 21-5-4(b) (emphasis added).

79. At the time of Plaintiff's separation of employment from Defendant Octane, Plaintiff had accrued, and Defendant Octane owed to him, nine weeks of earned vacation time.

80. Because Plaintiff was a salaried employee of Octane, his nine weeks of accrued vacation time are "fringe benefits capable of calculation" and thus are considered "wages due" under the WVWPCA.

81. Additionally, Plaintiff was never paid for working on the dates of July 22, 2016 and July 23, 2016, despite his salaried position.

82. To date, Defendants have failed and/or refused to pay Plaintiff's accrued vacation time and past due wages in violation of the WVWPCA.

83. Plaintiff has suffered, and continues to suffer, damages in the form of money damages as a result of Defendants' withholding and refusal to pay Plaintiff his accrued vacation time and wages due.

84. Further, because Octane failed to timely pay Plaintiff in accordance with the requirements set forth in the WVWPCA as described above, Plaintiff is entitled to recover the amount owed to Plaintiff and "two times that unpaid amount as liquidated damages." W. Va. Code § 21-5-4(e).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A. The declaratory judgments requested herein;

B. Compensatory damages for Defendants' breaches of contract to Plaintiff;

C. Pre-judgment interest and post-judgment interest on Plaintiff's breach of contract claims;

D. Compensatory damages for Plaintiff's accrued vacation time and other wages due pursuant to the WVWPCA;

E. Liquidated damages in an amount equal to two times the unpaid amount owed to Plaintiff by Defendants pursuant to the WVWPCA;

F. An injunction ordering the immediate return of Plaintiff's personal property by Defendants or, in the alternative, compensatory damages in an amount equal to the fair market value of Plaintiff's personal property;

G. Compensatory damages for the damage caused to Plaintiff's personal and professional reputation as well as his loss of dignity, humiliation, and embarrassment caused by Defendants' defamatory statements;

H. Reasonable attorneys' fees, forum fees and costs incurred in prosecuting this action; and

I. Such other and further relief as this Court deems just, proper, and equitable.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES.**

**Respectfully Submitted,**

**RICK RICHARDS**

**By Counsel,**

---

Christopher Brumley, Esq. (W. Va. Bar No. 7697)
W. Scott Evans (W. Va. Bar No. 5850)
Michael A. Secret (W. Va. Bar No. 13044)
**FLAHERTY SENSABAUGH BONASSO PLLC**
200 Capitol Street
Post Office Box 3843
Charleston, West Virginia 25338-3843
304-345-0200 Telephone
304-345-0260 Facsimile
cbrumley@flahertylegal.com

wsevans@flahertylegal.com
rmarsh@flahertylegal.com
rharrell@flahertylegal.com
*Attorneys for Plaintiff*