IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

RICK RICHARDS and
ERNEST RICHARDS, II,

    Plaintiffs/
    Counter Defendants,

v.                                Civil Action No. 1:18-CV-158
                                      c/w 1:18-CV-157
                                          (Judge Kleeh)

OCTANE ENVIRONMENTAL, LLC, an
Ohio limited liability company,
TERENCE SEIKEL,
CRAIG STACY, and
JOSEPH SEIKEL,

    Defendants/Counter Claimants/
    Third-Party Plaintiff/Counter Defendant,

v.

JASON RICHARDS,
AMANDA HUNT,
AARON GILES, and
JACOB RICHARDS,

    Third-Party Defendants/Counter Claimants
    against Octane Environmental, LLC.

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO DISMISS COUNTERCLAIMS [ECF NOS. 74, 93]**

Pending before the Court is a Motion to Dismiss the Counterclaims of Octane Environmental, LLC [ECF No. 74]. This Motion was amended at ECF No. 93 based on a technical omission in the original motion. For the reasons discussed below, the Court denies the Motion.

**MEMORANDUM OPINION AND ORDER DENYING**
**MOTION TO DISMISS COUNTERCLAIMS [ECF NOS. 74, 93]**

## I.    <u>PROCEDURAL HISTORY</u>

On July 17, 2018, Rick Richards and Ernest Richards, II (together, "Plaintiffs") filed separate but related suits in the Circuit Court of Harrison County, West Virginia, against the Defendants, Octane Environmental, LLC ("Octane"), Terence Seikel, Craig Stacy, and Joseph Seikel (together, "Defendants"). On August 16, 2018, the actions were removed to the Northern District of West Virginia. ECF No. 1. On August 23, 2018, Defendants filed an Answer to the Complaint. ECF No. 7. On November 15, 2018, the Honorable Irene M. Keeley, United States District Judge, entered an order consolidating the two cases through the pretrial conference and designating 1:18-CV-158 as the lead case. ECF No. 17. On December 3, 2018, the case was transferred to the Honorable Thomas S. Kleeh, United States District Judge.

On January 16, 2019, the Court granted Defendants leave to file a third-party complaint against Amanda Hunt, Aaron Giles, Jacob Richards, and Jason Richards. ECF Nos. 36, 37. On January 28, 2019, the Court granted Defendants leave to amend their Answer to include Counterclaims against Plaintiffs. ECF Nos. 47, 48. Defendants filed the Counterclaims on February 18, 2019. ECF Nos. 51, 52. On April 1, 2019, Plaintiffs filed a Motion to Dismiss the Counterclaims, which is ripe for consideration and the subject of

this Memorandum Opinion and Order. ECF No. 74. On April 17, 2019, Plaintiffs filed an Amended Motion to Dismiss the Counterclaims based on a technical oversight in the original motion. ECF No. 93.

## II.  FACTUAL BACKGROUND

In the Counterclaims against Ernest Richards and Rick Richards [ECF Nos. 51, 52], Octane alleges the following set of facts, which the Court regards as true for purposes of the Motion.

**A.  Ernest Richards**

In October 2017, Octane hired Ernest Richards to work in its Water Transfer Department. CCER, ECF No. 51, at ¶ 1.[1] In December 2017, Blue Ridge Mountain Resources awarded Octane its first significant water transfer job. Id. ¶ 2. It was at the Farley pad in Ohio. Id. Ernest Richards and Delbert Hickman supervised and executed the job between December 12, 2017, and December 29, 2017. Id. Octane did not fully complete the job at the Farley pad and was asked to leave the site. Id. ¶ 3. Ernest Richards and Delbert Hickman, while using Octane's equipment, personally completed the

---

[1] For purposes of this Memorandum Opinion and Order, the Counterclaim against Ernest Richards will be referred to as "CCER," and the Counterclaim against Rick Richards will be referred to as "CCRR." Paragraph numbers refer to the paragraphs within the Counterclaims themselves, beginning on page 8 of ECF No. 51 and page 12 of ECF No. 52.

job and received compensation in their personal capacities. Id. ¶ 4.

On April 1, 2018, Octane implemented an employee handbook. Id. ¶ 5; CCRR, ECF No. 52, at ¶ 5. Section four (4) of the handbook provides, "Employees may not use company systems in a manner that is unlawful, wasteful of company resources, or unreasonably compromises employee productivity or the overall integrity or stability of the company's systems." CCER, ECF No. 51, at ¶ 6; CCRR, ECF No. 52, at ¶ 6. Nothing in the handbook authorizes employees to delete information and/or files from Octane-provided laptop computers. CCER, ECF No. 51, at ¶ 7; CCRR, ECF No. 52, at ¶ 7. Section 4 also provides that "employees must never use their position with the company, or any of its customers, for private financial gain to advance personal financial interests, to obtain favors or benefits for themselves, members of their families or any other individuals . . . ." CCER, ECF No. 51, at ¶ 8; CCRR, ECF No. 52, at ¶ 8.

On or about May 1, 2018, Ernest Richards began working at Water Transfer Solutions, LLC, a competitor of Octane. CCER, ECF No. 51, at ¶ 9. He never informed Octane by written notice that he was ending his employment with Octane. Id. ¶ 10. On May 11, 2018, Octane terminated Ernest Richards from employment. Id. ¶ 11. He

received wages and medical benefits through May 11, 2018. Id. ¶¶ 12, 13. Ernest Richards possessed and used Octane's company-provided truck through May 11, 2018. Id. ¶ 14. He continued to possess Octane's company-provided credit card through May 11, 2018, and charged $640.61 to the card between May 1, 2018, and May 11, 2018. Id. ¶ 15. Around Friday, May 11, 2018, Rick Richards instructed and/or advised Ernest Richards to delete data and/or information from Ernest Richards's Octane-provided laptop computer or otherwise erase certain information maintained on the computer (and how to do it). Id. ¶¶ 16, 17; CCRR, ECF No. 52, at ¶¶ 10, 11. On or about May 11, 2018, Ernest Richards deleted confidential and/or trade secret information from his Octane-provided laptop. CCER, ECF No. 51, at ¶ 18.

**B.  Rick Richards**

In July 2016, Octane hired Rick Richards as its general manager. CCRR, ECF No. 52, at ¶ 1. During his period of employment with Octane, Rick Richards misrepresented himself to some of Octane's suppliers and customers as a partial owner of the company. Id. ¶¶ 2, 3. While Rick Richards was employed by Octane, he installed and maintained a program on his Octane-provided laptop that allowed him to immediately delete the contents of the computer by pushing a few keystrokes. Id. ¶ 9.

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO DISMISS COUNTERCLAIMS [ECF NOS. 74, 93]**

On May 13, 2018, Rick Richards emailed his letter of resignation to Terence Seikel. Id. ¶ 4. Before he did so, he provided Ernest Richards with software, information, and/or instructions on how to delete data and/or information from Ernest Richards's Octane-provided laptop (and then instructed him to do so). Id. ¶¶ 10, 11. On or around May 11, 2018, Rick Richards provided Amanda Hunt, Aaron Giles, and Jacob Richards with information about how to do the same. Id. ¶¶ 12, 14, 16. He then instructed and/or advised them to do so. Id. ¶¶ 13, 15, 17.

Between May 7, 2018, and May 10, 2018, Rick Richards connected a WD Easystore device to his Octane-provided laptop and transferred proprietary and/or confidential information from the laptop to the device. Id. ¶¶ 18, 19. Before submitting his notice of resignation at Octane, Rick Richards solicited the following employees to work for a competitor: Aaron Giles, Jason Richards, Amanda Hunt, Jacob Richards, Rudys Banegas Bonilla, Olmy Chavez Galeas, Anthony Curry, Dalton Davis, Michael Jordan, Sixto Melendez, Fredis Moran, Khamtu Phommalinh, Julio Rocha, Somphanh Phongsa, Samane Visethsounethone, Xay Xayavongsack, Somchai Khunthawat, Salvador Cortes-Aboitez, Sid Mahathirash, and Somphiane Khiaosoth. Id. ¶ 20.

### III. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal upon the ground that a complaint does not "state a claim upon which relief can be granted." In ruling on a motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A motion to dismiss under Rule 12(6)(b) tests the "legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The factual allegations "must be enough to raise a right to relief above a speculative level." Twombly, 550 U.S. at 545. The facts must constitute more than "a formulaic recitation of the elements of a

cause of action." Id. at 555. A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 942, 952 (4th Cir. 1992).

### IV. DISCUSSION

Defendants bring the same three counterclaims against Rick and Ernest Richards: (I) Breach of Duty of Loyalty; (II) Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; and (III) Civil Conspiracy. Plaintiffs have moved to dismiss all three. The Court will discuss each in turn.

**A.   Count I (Breach of Duty of Loyalty)**

At this stage in the proceedings, the nature of the employment relationship between each Richards Plaintiff and Octane is uncertain.[2] The Court lacks sufficient information to find as a matter of law that Defendants have failed to state a claim to relief that is plausible on its face. All parties, are, of course, welcome to seek judgment under the weighty but less onerous Rule

---

[2] Similar to this Court's findings in its Memorandum Opinion and Order Denying Motion to Dismiss with Prejudice and Denying Motion for Summary Judgment Without Prejudice, ECF No. 167, given the factual allegations made both in the Amended Complaint and Counterclaims, the Court finds disposition of any of those claims at the 12(b)(6) stage to be premature, as this Court cannot conclude that either pleading lacks "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

56 standard at summary judgment stage. At the 12(b)(6) stage, however, the Court denies the Motion to Dismiss as to Count I (Breach of Duty of Loyalty) for both Rick and Ernest Richards.

    **B.    Count II (Computer Fraud and Abuse Act, 18 U.S.C. § 1030)**

The Computer Fraud and Abuse Act ("CFAA") is "primarily a criminal statute designed to combat hacking." WEC Carolina Energy Sols. LLC v. Miller, 687 F.3d 199, 201 (4th Cir. 2012). Nevertheless, "a violation of any of the statute's provisions exposes the offender to both civil and criminal liability." Id. The Fourth Circuit has written:

> Among other things, the CFAA renders liable a person who (1) "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer," in violation of § 1030(a)(2)(C); (2) "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value," in violation of § 1030(a)(4); or (3) "intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage[,] or . . . causes damage and loss," in violation of § 1030(a)(5)(B)-(C).

Id.

In Miller, a company that provided specialized welding services sued one of its former employees after he resigned. Id.

at 202. The company alleged that before the employee resigned, he downloaded the company's proprietary information. Id. at 201. The employee then allegedly used the information — 20 days after he resigned — in a presentation he made on behalf of the company's competitor. Id. at 201. The company alleged violations of § 1030(a)(2)(C), (a)(4), (a)(5)(B), and (a)(5)(C), all of which require that a party either accessed a computer "without authorization" or "exceed[ed] authorized access." Id. at 203. Therefore, the court focused on analyzing those two concepts.

The Fourth Circuit took a narrow approach in defining these phrases. It wrote that an individual "accesses a computer 'without authorization' when he gains admission to a computer without approval." Id. at 204. He "'exceeds authorized access' when he has approval to access a computer, but uses his access to obtain or alter information that falls outside the bounds of his approved access. Notably, **neither of these definitions extends to the improper use of information validly accessed**." Id. (citations omitted and emphasis added). Because the complaint focused on the improper use of the information rather than the employee's lack of authorization or his exceeding authorization, the court affirmed the district court's dismissal of the claim. Id. at 207.

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO DISMISS COUNTERCLAIMS [ECF NOS. 74, 93]**

Because it is undisputed that Rick Richards and Ernest Richards were authorized to access their Octane-provided laptop computers,[3] and because their actual use of the information is irrelevant under the CPAA according to Miller, the issue before the Court is whether Defendants have sufficiently pled that the Plaintiffs exceeded their authorized access to their Octane-provided laptops. Unlike in Miller, Defendants have pled that Rick Richards and Ernest Richards exceeded their authorized access.[4] In the Counterclaim against Rick Richards, Octane argues that he exceeded his authorized access by installing and maintaining a program that allowed him to immediately erase the contents of his Octane-provided laptop. In the Counterclaim against Ernest

---

[3] See Octane Resp., ECF No. 91, at 8 ("Octane is not disputing Plaintiffs had the right to access their Octane-provided computers.").

[4] In Miller, the Fourth Circuit specifically noted the lack of an allegation that the employees exceeded their authorized access or acted without authorization. Miller, 687 F.3d at 207 ("Notably, however, WEC fails to allege that Miller and Kelley accessed a computer or information on a computer without authorization. Indeed, WEC's complaint belies such a conclusion because it states that Miller 'had access to WEC's intranet and computer servers' and 'to numerous confidential and trade secret documents stored on these computer servers, including pricing, terms, pending projects[,] and the technical capabilities of WEC.' Thus, we agree with the district court that although Miller and Kelley may have misappropriated information, they did not access a computer without authorization or exceed their authorized access.").

Richards, Octane argues that he exceeded his authorized access by deleting information from his Octane-provided laptop.

Further, the facts here are distinguishable from those in Miller. Miller did not involve employees' installation of a program on or deletion of information from a work computer. The alleged installation and deletion could each be considered an "alter[ation] [of] information on a computer beyond that which he is authorized to access." Miller, 687 F.3d at 206. Without more discovery, it is unclear what the specific boundaries of Plaintiffs' authorized access were. It would be premature to find that this alleged altering of the computer by Rick Richards — adding to it a program that can erase the information within it — was, as a matter of law, within his authorized access. The same applies to the alleged deletion of information by Ernest Richards. Therefore, the Court denies the motion to dismiss as to Count II (Violation of the Computer Fraud and Abuse Act) for both Ernest and Rick Richards.

### C.  Count III (Civil Conspiracy)

Under West Virginia law, "[a] civil conspiracy is not a per se, stand-alone cause of action; it is instead a legal doctrine under which liability for a tort may be imposed upon people who did not actually commit a tort themselves but who shared a common

plan for its commission with the actual perpetrator(s)." Syl. Pt. 9, Dunn v. Rockwell, 689 S.E.2d 255 (W. Va. 2009). It is "a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." Id. at Syl. Pt. 8. Here, because the Court has denied the motion to dismiss as to Counts I and II, it also denies the motion to dismiss as to Count III (Civil Conspiracy) for both Ernest and Rick Richards, as the Court finds that Octane has pled sufficient facts to survive a 12(b)(6) challenge to both the underlying tort claims and the essential elements of a claim for civil conspiracy.

### V.    CONCLUSION

For the reasons discussed above, the Motion to Dismiss Counterclaims [ECF Nos. 74, 93] is **DENIED**. The Clerk is directed to transmit copies of this Order to counsel of record.

It is so **ORDERED**.

DATED: December 6, 2019

_____
THOMAS S. KLEEH
UNITED STATES DISTRICT JUDGE